ENVIRONMENTAL DEFENSE FUND, INC., Petitioner,

v.

ENVIRONMENTAL PROTECTION AGENCY, Respondent,

Edison Electric Institute, et al., Chemical Manufacturers Association, Intervenors.

No. 82–1346.

United States Court of Appeals, District of Columbia Circuit.

Submitted Nov. 29, 1982.

Decided Aug. 30, 1983.

Khristine L. Hall and Daniel B. Edelman, Washington, D.C., were on the motion for attorneys' fees and expenses, for petitioner.

Lee R. Tyner, Atty., Dept. of Justice, Washington, D.C., was on the opposition to motion for attorneys' fees and expenses, for respondent. Donald W. Stever, Atty., Dept. of Justice, Gail B. Cooper and Mark A. Greenwood, Attys., E.P.A., Washington, D.C., also entered appearances for respondent.

John T. Smith, II, and Jennifer L. Machlin, Washington, D.C., entered appearances for intervenor, Chemical Mfrs. Ass'n.

Greer S. Goldman and Sue M. Briggum, Washington, D.C., entered appearances for intervenor, Edison Elec. Institute, et al.

Before MIKVA and EDWARDS, Circuit Judges and MacKINNON, Senior Circuit Judge.

Opinion for the Court PER CURIAM.

PER CURIAM:

On March 31, 1982, the Environmental Defense Fund ("EDF") petitioned for review of a decision by the Environmental Protection Agency ("EPA") to delay certain reporting requirements applicable to generators of hazardous waste and operators of hazardous waste treatment and disposal facilities. After EPA took action that in effect mooted the petition for review, the parties filed a joint motion for dismissal. We granted the motion on October 29, 1982.

EDF now asks the court to award costs, attorneys' fees, and expenses pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412 (Supp. V 1981). That statute provides, *inter alia,* that in a suit brought by or against the United States, the court "shall award" attorneys' fees to a "prevailing party" unless "the position of the United States was substantially justified." Because we find that EDF is a pre-

vailing party and that the position of EPA was not substantially justified, we grant the motion for costs, fees, and expenses.

## I. BACKGROUND

Sections 3002 and 3004 of the Resource Conservation and Recovery Act of 1976 ("RCRA"), 42 U.S.C. §§ 6901–6987 (1976 & Supp. V 1981), require EPA to promulgate hazardous waste record-keeping and reporting regulations "as may be necessary to protect human health and the environment." *Id.* §§ 6922, 6924. The regulations at issue in this litigation are three reporting requirements promulgated in 1980 pursuant to this statutory mandate. The regulations require submission of: (1) annual reports by generators of hazardous waste and by operators of waste treatment and disposal facilities, 40 C.F.R. §§ 262.41, 264.75, 265.75; (2) quarterly groundwater monitoring reports by operators of treatment and disposal facilities, *id.* § 265.94(a)(2)(i); and (3) groundwater quality assessment outlines by operators of treatment and disposal facilities, *id.* § 265.93(a).

The 1980 annual report was due on March 1, 1981. In January 1981, however, EPA permanently suspended the reporting requirement for 1980, stating that its "tremendous workload" precluded it from analyzing the reports adequately. *See* 46 Fed. Reg. 8395 (Jan. 26, 1981). In February 1982, EPA deferred compliance with all three reporting requirements until August 1, 1982.[1] This time, the agency explained that it was "currently developing formal proposals to substantially streamline or eliminate these requirements," and wished "to prevent the regulated community from expending resources toward complying with them in their present form." 47 Fed.Reg. 7841 (Feb. 23, 1982). Moreover, EPA determined that there was "good cause" to dispense with normal notice and comment procedures, and therefore made the suspension effective immediately. *Id.* at 7842.

On March 31, 1982, EDF filed a petition for review of the agency's decision to suspend the reporting requirements without public notice and comment. *See* 42 U.S.C. § 6976(a) (Supp. V 1981). The parties then undertook settlement negotiations, and we held the appeal in abeyance upon their representation that an agreement was near. No compromise was reached, however, and when the August 1 deadline brought no further action from the agency, EDF sought a court order compelling publication of a *Federal Register* notice reinstating the reporting requirements. EPA opposed the request, claiming that the groundwater monitoring and assessment outline requirements had gone back into effect on August 1, and that no additional notice was required. With respect to the annual reports, EPA conceded that the requirement was not in effect, but blamed the delay on the Office of Management and Budget which had denied clearance for the annual report forms under the Paperwork Reduction Act of 1980, 44 U.S.C. §§ 3501–3520 (Supp. V 1981).[2]

On September 24, EDF filed its brief on the merits. On October 12, however, EPA mooted the case by publishing a notice that all three requirements were back in effect—essentially all the relief that EDF had wanted. *See* 47 Fed.Reg. 44,938 (Oct. 12, 1982). We then granted the parties' joint motion to dismiss, subject to the right of EDF to make the instant motion.

## II. ANALYSIS

EDF bases its request for attorneys' fees and expenses on section 2412(d)(1)(A) of the EAJA, which reads in relevant part:

*Except as otherwise specifically provided by statute,* a court shall award to a *prevailing party* other than the United States fees and other expenses . . . incurred by that party in any civil action (other than cases sounding in tort) brought by or against the United States

---

1. The groundwater quality outlines were due in November 1981, the annual report in March 1982, and the quarterly groundwater reports in March and June 1982.

2. A panel of this court denied EDF's request for extraordinary relief on September 14, 1982.

... *unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.*

28 U.S.C. § 2412(d)(1)(A) (Supp. V 1981) (emphasis added). EPA puts forward three arguments against an award under this provision. First, EPA claims that the EAJA is inapplicable because RCRA has a specific attorneys' fees provision that exclusively governs this case. Second, EPA argues that EDF is not a "prevailing party" within the meaning of the EAJA. Finally, EPA asserts that no award is appropriate because the "position of the United States was substantially justified." We address each argument in turn.[3]

### A. Applicability of the EAJA

[1] Relying on the conditional language "[e]xcept as otherwise specifically provided by statute," EPA argues that EAJA section 2412(d)(1)(A) cannot apply here because RCRA has its own specific fee-shifting provision, 42 U.S.C. § 6972(e) (Supp. V 1981). EDF, however, contends that RCRA does not authorize attorneys' fees in appellate petitions for review, and that section 2412(d)(1)(A) was intended to fill such a gap. We agree with EDF's interpretation of both statutes.

RCRA's fee provision permits an award of attorneys' fees and costs in "citizen suits" brought in the district courts under 42 U.S.C. § 6972(a) (1976). The statute makes no reference to fees or costs in review proceedings commenced in the courts of appeals. *Id.* § 6976(a). In construing virtually identical provisions of the Clean Water Act and the Clean Air Act, we have

held that such silence indicates that Congress intended to preclude fee-shifting in appellate petitions for review. *See Montgomery Environmental Coalition v. Costle,* 646 F.2d 595, 597 (D.C.Cir.1981) (Clean Water Act); *NRDC v. EPA,* 512 F.2d 1351, 1354 (D.C.Cir.1975) (Clean Air Act). Because we can see no reason to distinguish the RCRA provision from those of the other two statutes,[4] we conclude that RCRA does not authorize attorneys' fees in appellate petitions.

Nevertheless, EPA contends that the EAJA is inapplicable to any suit brought under a statute containing a fee provision, even if that provision does not apply to the pending case. Recently, in a petition for review brought in the Third Circuit under the Clean Water Act, EPA put forward the same argument. Like RCRA, the Clean Water Act authorizes attorneys' fees and costs for "citizen suits" in district courts, but is silent with respect to petitions for review in the courts of appeals.[5] Still, EPA claimed that the EAJA was inapplicable even though the Clean Water Act fee-shifting provision does not apply to appellate petitions for review. Interpreting congressional intent, the Third Circuit found EPA's position unpersuasive:

Congress intended the EAJA to expand the potential for fee awards under certain circumstances, not to freeze the absence of counsel fee provisions in existing statutes. In this case where there is no applicable fee-shifting provision in the Clean Water Act, acceptance of EPA's reading of the EAJA would create "a

---

3. EDF bases its request for costs on another section of the EAJA, which provides in part:
    [A] judgment for costs ... may be awarded to the prevailing party in any civil action brought by or against the United States or any agency and any official of the United States acting in his or her official capacity
    ....
    28 U.S.C. § 2412(a) (Supp. V 1981). Because the only substantive issue raised by the motion for costs—whether EDF is a prevailing party—is also raised by the request for fees and expenses, we do not address the motion for costs separately.

4. The language of the RCRA provision is almost identical to that of the Clean Air Act and the Clean Water Act. *Compare* 42 U.S.C. § 6972(e) (Supp. V 1981) (RCRA) *with* 33 U.S.C. § 1365(d) (1976) (Clean Water Act) *and* 42 U.S.C. § 7604(d) (Supp. V 1981) (Clean Air Act). This should not be surprising, because Congress modeled the RCRA provision after the fee-shifting provisions of the other two statutes. *See* S.Rep. No. 988, 94th Cong., 2d Sess. 17–18 (1976).

5. *See* 33 U.S.C. §§ 1365(d), 1369(b) (1976).

no-man's land contrary to clearly expressed Congressional purposes."

*NRDC v. EPA,* 703 F.2d 700, 705–06 (3d Cir.1983) (quoting *Ocasio v. Schweiker,* 540 F.Supp. 1320, 1323 (S.D.N.Y.1982)). We agree with the Third Circuit's reasoning. The legislative history of the EAJA clearly indicates that it was intended to apply "to cases (other than tort cases) where fee awards against the government are not already authorized." H.R.Rep. No. 1418, 96th Cong., 2d Sess. 18, *reprinted in* 1980 U.S. Code Cong. & Ad.News 4953, 4997; S.Rep. No. 253, 96th Cong., 1st Sess. 20 (1979); *see also Spencer v. NLRB,* 712 F.2d 539 at 545 n. 18 (D.C.Cir.1983) (EAJA "designed to supplement a host of more specific provisions allowing for the award of attorneys' fees"). We hold, therefore, that EAJA section 2412(d)(1)(A) applies to petitions for review brought under RCRA.

### B. *EDF as a "Prevailing Party"*

In order to recover costs, attorneys' fees, or expenses under the EAJA, EDF must be a "prevailing party." Recently, the Supreme Court identified the standard for determining this status: "plaintiffs may be considered 'prevailing parties' for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Hensley v. Eckerhart,* —— U.S. ——, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983) (quoting *Nadeau v. Helgemoe,* 581 F.2d 275, 278–79 (1st Cir.1978)).[6] It is clear that EDF can meet this test without having received a final judgment in its favor,[7] and we conclude that it has done so.

In July 1981, EPA gave explicit notice that it planned to eliminate the annual reporting requirement for generators of hazardous waste and operators of hazardous waste facilities. *See* 46 Fed.Reg. 39,426 (July 31, 1981). In February 1982, the agency suspended until August 1982 all three reporting requirements for the express purpose of relieving industry from the burden of complying with regulations that EPA intended "to substantially streamline or eliminate." 47 Fed.Reg. 7841 (Feb. 23, 1982). Thus, at the time EDF brought this suit, it reasonably appeared that the reporting requirements might never be reinstated in their original form.

By contrast, at the time of the joint dismissal of this appeal, EPA had published a notice that the reporting requirements were back in effect and that compliance was required. *See* 47 Fed.Reg. 44,938 (Oct. 12, 1982). Although EPA contends that this suit produced nothing more than "would happen anyway through the passage of time,"[8] we think it clear that EDF has achieved its basic purpose in bringing this action. "[F]or a plaintiff to prevail [under the EAJA], it is sufficient that his lawsuit acted as a 'catalyst' in prompting defendants to take action to meet his claims." *Citizens Coalition for Block Grant Compliance v. City of Euclid,* 537 F.Supp. 422, 425 (N.D.Ohio 1982). EPA intended to eliminate the three reporting requirements. The record in this case seems to make it plain beyond cavil that, but for this litigation, the original reporting requirements would not have been reinstated.

---

**6.** Although *Hensley* arose under the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988 (Supp. V 1981), the Court stated that "[t]he standards set forth in this opinion are generally applicable in all cases in which Congress has authorized an award of fees to a 'prevailing party.'" 103 S.Ct. at 1939 n. 7.

**7.** *See Spencer v. NLRB, supra,* at 542, 557 & n. 63; *United States ex rel. Heydt v. Citizens State Bank,* 668 F.2d 444, 447 (8th Cir.1982). The legislative history of the EAJA is explicit on this point:

[T]he phrase "prevailing party" should not be limited to a victor only after entry of a final judgment following a full trial on the merits. A party may be deemed prevailing if he obtains a favorable settlement of his case ... or even if he does not ultimately prevail on all issues.

S.Rep. No. 253, 96th Cong., 1st Sess. 7 (1979); H.R.Rep. No. 1418, 96th Cong., 2d Sess. 11, *reprinted in* 1980 U.S.Code Cong. & Ad.News 4953, 4990; *see* H.R.Rep. No. 1434, 96th Cong., 2d Sess. 21–22 (1980) (conference report).

**8.** Respondent's Opposition to Petitioner's Motion for Costs, Attorneys' Fees and Expenses at 11.

### C. *Substantial Justification for the "Position of the United States"*

■ Because EDF is a prevailing party, it is entitled to attorneys' fees under the EAJA unless EPA can demonstrate that "the position of the United States was substantially justified." [9] Recently, in *Spencer v. NLRB, supra,* we held that the position of the United States means "the arguments relied on by the government in litigation." At 557. This does not mean that the government must establish that it had a substantial probability of prevailing on the merits. *Id.* at 557. Rather, the legislative history of the EAJA indicates that "the test should ... be slightly more stringent than 'one of reasonableness.'" *Id.* at 558. Using this standard, we conclude with complete assurance that the litigation position of the United States in this case was *not* substantially justified.

The legal issue raised by this proceeding is whether EPA properly suspended the three reporting requirements without following appropriate notice and comment procedures. The Administrative Procedure Act ("APA") requires an agency to provide advance public notice and opportunity for comment when it engages in substantive rulemaking. 5 U.S.C. §§ 553(b), (c) (1976). This requirement permits interested parties to criticize the proposed agency action, and allows the agency to benefit from outside suggestions. *See National Tour Brokers Association v. United States,* 591 F.2d 896, 902 (D.C.Cir.1978). The suspension or delayed implementation of a final regulation normally constitutes substantive rulemaking under APA § 553. *See, e.g., Environmental Defense Fund v. Gorsuch,* 713 F.2d 802 at 816 (D.C.Cir.1983); *NRDC v. EPA,* 683 F.2d 752, 761 (3d Cir.1982); *Council of Southern Mountains, Inc. v. Donovan,* 653 F.2d 573, 580 n. 28 (D.C.Cir.1981) (per curiam). Thus, on its face, the suspension of the RCRA reporting requirements was subject to APA notice and comment provisions.

In taking its action, however, EPA attempted to rely on the "good cause" excep-

tion to the notice and comment requirements:

> Today's actions are final and·immediately effective. The Agency has determined that there is good cause under 5 U.S.C. § 553(b) to make these changes immediately effective without prior notice or public comment.

47 Fed.Reg. 7842 (Feb. 23, 1982). When properly invoked, this exception allows an agency to forego notice and comment when it "for good cause finds ... that notice and public procedure thereon are impracticable, unnecessary, or contrary to the public interest." 5 U.S.C. § 553(b)(B) (1976). This court has stated that such exceptions to notice and comment procedures "will be narrowly construed and only reluctantly countenanced." *State of New Jersey, Department of Environmental Protection v. EPA,* 626 F.2d 1038, 1045 (D.C.Cir.1980); *see Environmental Defense Fund v. Gorsuch, supra,* at 816. The justifications for the exception "are *not* 'escape clauses' that may be arbitrarily utilized at the agency's whim." *American Federation of Government Employees v. Block,* 655 F.2d 1153, 1156 (D.C.Cir.1981) (emphasis in original). Accordingly, we have held that use of the exception "should be limited to emergency situations." *Consumer Energy Council of America v. FERC,* 673 F.2d 425, 448 (D.C. Cir.1982) (quoting *Block, supra,* 655 F.2d at 1156), *aff'd mem. sub nom. Process Gas Consumers Group v. Consumer Energy Council of America,* —— U.S. ——, 103 S.Ct. 3556, 77 L.Ed.2d 1402, 1403, 1413 (1983).

EPA's justification for invoking the good cause exception was an alleged pressing need to avoid industry compliance with regulations that were to be eliminated. According to the agency, it was "essential to take ... action[ ] before the regulated community expend[ed] resources." 47 Fed.Reg. 7842 (Feb. 23, 1982). Immediate suspension was claimed to be crucial because the 1981 annual report would have been due on March 1, 1982—less than one week after the notice of suspension. In *Council of South-*

---

**9.** It is clear that this burden is on the government. *See Spencer v. NLRB, supra,* at 557.

*ern Mountains, supra,* this court explained that "the imminence of the deadline" permits an agency to avoid APA procedures "only in exceptional circumstances." 653 F.2d at 580–81. "Otherwise, an agency . . . could simply wait until the eve of a[n] . . . administrative deadline, then raise up the 'good cause' banner and promulgate rules without following APA procedures." *Id.* at 581. That is apparently what happened in this case, and the agency's action therefore falls outside the scope of the good cause exception.

■ At the time of the suspension, EPA had already deferred the annual report requirement from March 1981 to March 1982. *See* 46 Fed.Reg. 8395 (Jan. 26, 1981). Moreover, EPA had expressed its intention to suspend or eliminate the requirement as early as July 1981. *See* 46 Fed.Reg. 39,426 (July 31, 1981). Under these circumstances, EPA has failed to demonstrate that outside time pressures forced the agency to dispense with APA notice and comment procedures; since the good cause exception does not apply when an alleged "emergency" arises as the result of an agency's own delay, the claims here advanced by EPA are baseless. *See NRDC v. EPA,* 683 F.2d 752, 765 (3d Cir.1982). In short, there was no legitimate reason whatsoever for EPA to ignore the commands of the APA regarding notice and comment. Therefore, it was not at all reasonable for EPA to rely on the good cause exception in this litigation.

Furthermore, the timing of EPA's litigation decisions indicates that its position was unreasonable. The agency knew that EDF sought a *Federal Register* notice announcing the reinstatement of the reporting requirements. EPA contends that those requirements went back into effect on August 1, 1982 irrespective of any additional published notice. Yet EPA did not act to moot the case by publishing a *Federal Reg-*

*ister* notice until October 12—two weeks after EDF filed its brief on the merits. It is hard to explain this decision to wait over two months until shortly after petitioner had to expend considerable resources in filing its brief. This is exactly the type of arbitrary governmental behavior that the EAJA was designed to deter. *See Spencer v. NLRB, supra,* at 549–550. We therefore hold that EPA has failed to demonstrate that its litigation position was "substantially justified."

### III. CONCLUSION

■ EDF has requested a total award of $6,102.19, plus costs, and we find this amount to be fully justified and appropriate. *See EDF v. EPA,* 672 F.2d 42 (D.C.Cir. 1982); *cf. National Association of Concerned Veterans v. Secretary of Defense,* 675 F.2d 1319 (D.C.Cir.1982) (per curiam).[10] Accordingly, we grant the motion for costs, fees, and expenses.

*So ordered.*

10. EPA challenges the amount of this request on two grounds, both of which are without merit. First, EPA opposes payment for the hours spent on EDF's motions to expedite, to stay, and to supplement the record—all of which were denied by this court. We conclude, however, that EDF's work on those motions contributed to the ultimate result obtained in this litigation. *See Hensley v. Eckerhart, su-*

*pra,* 103 S.Ct. at 1940. Second, EPA argues that the two hours EDF spent preparing an administrative petition for stay are not compensable because that petition "was not part of the litigation." This position is unpersuasive. The filing of an administrative petition for stay is a prerequisite to filing a judicial petition. *See* Fed.R.App.P. 18.