Emily C. MARTIN, et al.

v.

Charles A. LAUER, Acting Administrator, Office of Juvenile Justice and Delinquency Prevention, et al., Appellants.

No. 83–1991.

United States Court of Appeals, District of Columbia Circuit.

Argued April 17, 1984.

Decided July 27, 1984.

Douglas Letter, Atty., Dept. of Justice, Washington, D.C., with whom Richard K. Willard, Acting Asst. Atty. Gen., Joseph E. diGenova, U.S. Atty., and Leonard Schaitman, Atty., Dept. of Justice, Washington, D.C., were on the brief, for appellants. William Kanter, Washington, D.C., also entered an appearance for appellants.

Mona Lyons, Washington, D.C., with whom John W. Karr, Washington, D.C., was on the brief, for appellees.

Before TAMM and EDWARDS, Circuit Judges, and HAYNSWORTH,* Senior Circuit Judge, United States Court of Appeals for the Fourth Circuit.

Opinion for the Court filed by Circuit Judge HARRY T. EDWARDS.

Dissenting opinion filed by Senior Circuit Judge HAYNSWORTH.

HARRY T. EDWARDS, Circuit Judge:

In March 1982, plaintiffs Emily Martin and David West brought suit against their employer, the Office of Juvenile Justice and Delinquency Prevention (OJJDP), and the agency's acting administrator, Charles Lauer. The plaintiffs argued that by imposing various restrictions on their right to communicate with counsel, OJJDP and Lauer (the defendants) had violated the

---

* Sitting by designation pursuant to 28 U.S.C. § 294(d) (1982).

First Amendment and various provisions in the Civil Service Reform Act of 1978, 5 U.S.C. §§ 2301, 2302 (1982). Although the plaintiffs' claims were dismissed by the District Court, *Martin v. Lauer*, No. 82–0587 (D.D.C. Mar. 19, 1982) (*"Martin I"*), this decision was reversed on appeal by this court on First Amendment grounds. *Martin v. Lauer*, 686 F.2d 24 (D.C.Cir.1982) (*"Martin II"*). After settling the remaining disputes in the case, the plaintiffs successfully applied for an award of attorneys' fees under the Equal Access to Justice Act, 28 U.S.C. § 2412 (1982). 562 F.Supp. 503. In this appeal we are asked to review this award. After careful consideration of the parties' contentions, we conclude that the award must be affirmed in part and reversed in part.

### BACKGROUND

The plaintiffs are employed by OJJDP in senior-level management positions. On December 3, 1981, they and other OJJDP employees received notification that because of budgetary constraints the OJJDP would soon have a reduction in force (RIF). Although the defendants indicate that the plaintiffs' jobs were secure, the plaintiffs joined a majority of OJJDP employees in retaining counsel to contest this personnel action. On February 23, 1982, the plaintiffs notified defendant Lauer of their participation in an anticipated lawsuit challenging the RIF.

Lauer responded the next day with a memorandum imposing prospective and retrospective restrictions on the plaintiffs' communications with counsel. Paragraphs three and five of the memorandum provided as follows:

3. You may not provide information or documents to the attorney representing these employees or to any other person assisting the employees or that attorney. In addition, there is a Department of Justice regulatory procedure governing the release of information involving litigation (See 28 C.F.R. § 16.21 *et seq.*). Employees are prohibited from releasing any information,

producing any materials or disclosing any information in those materials except with the approval of the appropriate Department official which in this matter would be the Assistant Attorney General of the Civil Division.

Any requests under the Freedom of Information Act should not be responded to until I have been informed of the nature of the request and the information that you propose to release in response to that request. I will then consult with the Office of General Counsel concerning the release of the information. This restriction is intended to allow the Federal Government to assert any exemptions that it may be entitled to under the Freedom of Information Act (5 C.F.R. § 735.206).

. . . .

5. If you or your employees have already provided information or documents to the attorney, either directly or indirectly, I want a report concerning all oral information provided and a copy of all such documents delivered to me by February 26.

Memorandum From Charles Lauer To Emily Martin & David West 2 (Feb. 24, 1982). The memorandum warned that senior-level managers would "not be permitted to take actions which violate DOJ regulations or impinge upon the ability of DOJ counsel to effectively defend the Government in litigation. I will not hesitate to take immediate and appropriate disciplinary action to assure that the Government's interests are protected." *Id.* at 3.

On March 1, 1982, the plaintiffs filed suit alleging that these restrictions violated the First Amendment and the "whistleblower" provisions in the Civil Service Reform Act of 1978. 5 U.S.C. §§ 2301, 2302 (1982). While considering the plaintiffs' request for injunctive relief, the District Court judge directed the parties to attempt an informal resolution of the dispute. After counsel for the parties met, Lauer issued a temporary "Clarification Memorandum" on March 4, modifying paragraphs three and

five of the original memorandum in the following manner:

3. Paragraph 3 has been narrowed to prohibit you from disclosing any Government information which could be subject to the Privacy Act and that may result in an unwarranted invasion of personal privacy if it is released. This includes information contained in the official personnel file of an agency employee (other than your own file) or any other information which may have identifying characteristics to a particular employee and which may amount to an unwarranted invasion of personal privacy if released. Any questions concerning particular information should be presented to me or to the Office of General Counsel. Because of the inherent conflict between your duties as a manager and Government employee and your participation in the preparations for the proposed lawsuit, it would be improper for you to make a decision concerning the release of any such information. This modification is effective until further notice.

. . . .

5. The deadline under Paragraph 5 is extended until there is a resolution of this matter by the District Court or by agreement between the parties involved.

Memorandum From Charles Lauer To Emily Martin & David West 2 (Mar. 4, 1982). The plaintiffs subsequently filed a *Praecipe* with the court withdrawing their application for a temporary restraining order because "it appears that defendant Lauer's second memorandum will preserve the *status quo ante* pending this Court's resolution of this case on the merits." *Martin I*, No. 82–0587 (D.D.C. Mar. 4, 1982) (*Praecipe*).

It should be emphasized that the March 4 modifications were temporary. As this court observed in its prior consideration of this case in *Martin II*, "[a]lthough the clarification memorandum appeared to narrow the issues in this case, the government's brief opposing [plaintiffs'] motion for a preliminary injunction made clear that the government would return to the broader requirements of the February 24th memorandum if it prevailed before the district court." *Martin II*, 686 F.2d 24, 29 (D.C. Cir.1982) (footnote omitted). *See* Defendants' Memorandum of Points and Authorities in Opposition To Plaintiffs' Motion For a Preliminary Injunction 4 (Mar. 8, 1982) (The discussions between the parties "resulted in a subsequent memorandum to plaintiffs from Mr. Lauer dated March 4, 1982 which clarified and modified some of the restrictions contained in the February 24 memorandum. If the government prevails in this action, *the scope of the information which is restricted from being disclosed will be broadened to include any government information.*") (emphasis added). Hence, in *Martin II*, this court characterized the defendants' "position" before the trial court as follows: "the clarification memorandum withdrew any need for preliminary injunctive relief, but [the plaintiffs'] case on the merits should be decided with respect to the original memorandum." *Martin II*, 686 F.2d at 29 n. 17.

At a March 15 proceeding before the District Court, the defendants continued to assert the need for broad restrictions on disclosure of government information.[1] Although they made generalized statements concerning this necessity, the defendants did not proffer evidence to show that the plaintiffs had access to, or intended to disclose, sensitive government information.[2]

---

**1.** The defendants explained at several points in the proceeding that no government documents or information were to be disclosed absent prior approval from government officials. *See* Transcript of March 15, 1982 Proceedings, at 36–37, 42, 58 (Mar. 15, 1982) (statements of defendants' attorney).

**2.** The defendants did make a brief reference to the "171's of the 17 people who will be replacing the RIFed employees." *Id.* at 36. However, the plaintiffs' attorney represented to the court that she had not seen the 171 forms, did not wish to receive them from the plaintiffs, and had requested that the government supply this information without indicating the identity of the

Nor did they respond to the plaintiffs' contention that the defense of the restrictions was "replete with vague and abstract references to defendants' interest"[3] without any specification of the information that concerned the government.[4]

During the March 15 hearing, the plaintiffs argued that the challenged restrictions were sweeping prior restraints on their right to communicate with counsel and contravened the First Amendment. Their attorney emphasized that disclosure of sensitive material was not involved in this case, and repeatedly represented to the trial court that she had "not asked for, nor ... received from [the plaintiffs], information that ... could even arguably be within the reach of a Fourth Amendment or a Privacy Act consideration." Transcript of March 5, 1982 Proceeding, at 43 (Mar. 15, 1982).[5] The attorney then indicated that she was immediately willing to show the court *in camera* all documentary material supplied by the plaintiffs. *Id.* at 44.

Later during the proceedings before the trial court, the District Court judge, without any objection from the parties, stated that he would decide the case on the merits, based on the papers as supplemented by any proffers made by the parties. *See* Transcript of March 15, 1982 Proceeding, at 50, 60 (Mar. 15, 1982). The trial court reported its decision in *Martin I* four days later, rejecting the motion for preliminary relief and dismissing the action on the merits. *Martin I*, No. 82–0587 (D.D.C. Mar. 19, 1982). The District Court held that the "whistleblower" provisions in the Civil Service Reform Act were not applicable to restrictions of the sort at issue. *Id.*, mem. op. at 6. The court also found that while the plaintiffs "clearly" had a constitutionally protected interest in communicating with

their attorneys, the government could limit such communications as long as the limitations were "as unoffensive and narrowly drawn as possible." *Id.* at 5. The court held that the "defendants' memorandum of February 24, 1982, as clarified in the memorandum of March 4, 1982" satisfied this test, reasoning that

> It does not require, nor could it legally require, plaintiffs to reveal the content of their conversations with their attorneys ˙regarding their proposed lawsuit. Nor does it restrict the plaintiffs from conversing regarding their own personal knowledge and experiences of the circumstances surrounding the challenged RIF. Nor does it prohibit the plaintiffs from obtaining government documents that may be relevant to the lawsuit; it merely requires that these employees, in the interest of protecting other individuals' potential privacy rights, be required to seek approval before releasing any documents. The Court finds this to be a valid exercise of the government's authority ... *as long as it is very strictly limited to the narrow scope of the March 4, 1982 clarification memorandum.*

*Id.* at 5–6 (emphasis added).

Despite the trial court's stipulation that only the narrower March 4 restrictions could be enforced, defendant Lauer immediately sent the plaintiffs a memorandum indicating that "the restrictions contained in my *February 24 memorandum* in Paragraphs 3 and 5 are now in effect and you may not release *any* Government documents or information to your attorney or to yourselves." Memorandum From Charles Lauer To Emily Martin & David West (Mar. 19, 1982) (emphasis added). The

---

persons with respect to whom the information related. *Id.* at 52.

**3.** Plaintiffs' Reply To Defendants' Opposition To Motion For Preliminary Injunction 3 (Mar. 12, 1982).

**4.** *Id.* at 3, 6 n. 9, 8 n. 11.

**5.** *Accord* Transcript of March 15, 1982 Proceeding, at 13 (Mar. 15, 1982) ("I have no interest in

our clients providing us with information that violates the Privacy Act. There are criminal and civil penalties that come with that statute."); *id.* at 33–34 ("we have no quarrel here with the Privacy Act exclusions .... I don't want that information. I can't use that information, and I think it would be offensive for me to have that information ...."); *id.* at 46–47 (same).

plaintiffs returned to the trial court, arguing that this new memorandum violated the court's decision on the narrow ground that it required disclosure of all information disclosed *orally* to plaintiffs' attorney. Motion For Clarification of March 19, 1982 Order Or, Alternatively, For a Stay (Mar. 22, 1982). The court rejected this contention, indicating that the word "entire" had unintentionally been omitted in its previous decision and that it had meant to say that the defendants could not require the plaintiffs "to reveal the *entire* content of their conversations with their attorneys regarding the proposed lawsuit." *Martin I*, No. 82–0587 (D.D.C. Mar. 24, 1982) (Order Concerning Clarification of March 19, 1982 Order). While indicating that its holding was otherwise "unaltered," the District Court delineated the information that the plaintiffs were to disclose:

> The plaintiffs, in compliance with Paragraph 3 of the March 4, 1982 memorandum, may not disclose, without prior approval from the government, any government documents, or information contained in those documents, which could be subject to the Privacy Act and that may result in the unwarranted invasion of personal privacy if it is releaed [sic]. Nor can plaintiffs respond to any Freedom of Information Act requests without defendants' approval.
>
> The Court further finds that in compliance with Paragraph 5 of the memoranda, plaintiffs must disclose to the defendants any government documents, or information contained in those documents, *which has already been revealed to plaintiffs' counsel,* which could be subject to the Privacy Act, or exempt under the Freedom of Information Act, or could result in the unwarranted invasions of personal privacy if it is released.

*Id.*

The plaintiffs then sought relief from this court. In reviewing the case, the court summarily rejected the plaintiffs' "whistleblower" claim, reasoning that the statutory

basis for the claim only worked "as a defense to disciplinary action." *Martin II*, 686 F.2d 24, 29 n. 19 (D.C.Cir.1982). The court also indicated that no live controversy remained with respect to documents previously disclosed by plaintiffs to their attorney because the plaintiffs had—following the District Court's decision—already revealed these documents to the defendants. *Id.* at 30 n. 24. Next, the court declined to resolve any Privacy Act[6] issue, holding that a remand was necessary so that the District Court could "determine whether the Privacy Act restrictions are in fact contested in this case, and if so, [the court] should assess whether there are any disputed facts that would aid the court's resolution of this difficult issue." *Id.* at 31.

Turning to the defendants' restrictions as applied to Freedom of Information Act (FOIA)[7] material, the court in *Martin II* held that the across-the-board limitation on disclosure of FOIA-exempt information to an attorney was unconstitutional and it therefore reversed the lower court's decision. It explained that in evaluating restrictions on the First Amendment rights of public employees, courts were required to balance the employees' interests against the government's—a "balance [that] will differ according to the type of·speech, the nature of the agency, and the context in which the speech is uttered." *Id.* at 31 (footnotes omitted). In undertaking this balancing, the court first looked to the plaintiffs' interests and found that the restrictions could "seriously hamper[ ]" initial consultations between employees and attorneys. *Id.* at 33. Thus, it found that the plaintiffs' "speech interests are not only legitimate but, because they implicate ... [the plaintiffs'] fundamental right of access to the courts, are deserving of rigorous protection." *Id.*

Against this interest the court in *Martin II* balanced the government's interest in *broadly* restricting disclosure of FOIA-exempt material. While acknowledging the government's legitimate interest with re-

---

**6.** 5 U.S.C. § 552a (1982).

**7.** 5 U.S.C. § 552 (1982).

spect to some FOIA-exempt material, the court pointed to the lesser interest "in preventing dissemination of much of the information covered by exemption two—information relating solely to internal personnel rules and practices. 5 U.S.C. § 552(b)(2)." *Id.* at 34. In particular, the court explained that, "[t]o the extent that matters are exempted from disclosure under exemption two on grounds of administrative burden, the exemption certainly does not represent a government interest in preventing employees from openly discussing such 'government information.'" *Id.* It also emphasized that this case involved only a limited disclosure to the plaintiffs' attorneys rather than *public* dissemination of information. *Id.* The court observed that there was no specific allegation that the attorneys would reveal the information publicly, and that means were available by which the government might prevent such public revelations. *Id.* at 34, 35. Hence, the court concluded that "a broad restriction, undermining the confidentiality of the attorney-client relationship and chilling discussions with counsel in order to protect the government's unclear interest in monitoring *all* discussions of FOIA-exempt information cuts too deeply into the employee's first amendment rights." *Id.* at 34–35.

Following this decision in *Martin II,* the case returned to the District Court for reconsideration of the Privacy Act issues. In a proceeding before the District Court, the parties indicated their understanding that no information covered by the Privacy Act was at issue and hence no live controversy remained concerning the merits of the case. In response to the District Court judge's suggestion that this aspect of the case was probably "moot from the beginning," the defendants' counsel incorrectly [8] informed the judge that "it was only yesterday" that the plaintiffs' counsel had represented that "no conceivably protected Privacy Act information" was involved. Transcript of October 15, 1982 Proceeding, at 5 (Oct. 15, 1982). Pursuant to the judge's recommendation, the parties agreed that the action

should be dismissed as moot based on the following stipulation:

> Department of Justice policy provides that certain basic personnel information may be released, including (1) name; (2) present and past position titles; (3) present and past grades; (4) present and past salaries; and (5) present and past duty stations; and (6) information particularly pertaining to the professional qualifications of federal employees. Such information includes post-graduate or technical education in preparation for the employee's profession; all prior employment in State and Federal Government positions; prior employment in the private sector related to an employee's duties; awards and honors received; and membership in professional groups. Plaintiffs represent that they did not disclose to their counsel any information with respect to other federal employees that was beyond the scope of the above categories.

*Martin v. Lauer,* No. 82–0587 (D.D.C. Oct. 15, 1982) (Stipulation and Order of Dismissal), *reprinted in* Joint Appendix ("J.A.") 59.

With the merits of the case thus resolved, the plaintiffs applied to the District Court for an award of attorneys' fees and expenses under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412 (1982). The court held that the plaintiffs were entitled to attorneys' fees as the prevailing party "with regard to the restrictions placed on FOIA-exempt materials." *Martin v. Lauer,* 562 F.Supp. 503, 505 (D.D.C. 1983). It also ruled that the plaintiffs should be compensated for time spent "on their whistleblower claim" because this was "an alternative legal theory intended to remedy the same injury." *Id.* at 505–06. However, because the "Privacy Act claim should never have been litigated in the first place," the court held that the plaintiffs should not be compensated for time spent on this issue. *Id.* at 505. The defendants appeal from this judgment.

---

8. *See* note 5, *supra,* and accompanying text.

DISCUSSION

■ The pertinent language in the Equal Access to Justice Act provides that:

Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action (other than cases sounding in tort) brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A) (1982). Our prior decisions have articulated principles to guide the award of attorneys' fees under the EAJA. We have held that the Act's reference to "the position of the United States" means "the arguments relied upon by the government in litigation." *Spencer v. NLRB*, 712 F.2d 539, 557 (D.C.Cir.1983), *cert. denied*, —— U.S. ——, 104 S.Ct. 1908, 80 L.Ed.2d 457 (1984).[9] It is the government's burden to show that its litigation position was substantially justified. *Id.*[10] In determining whether the government's position was substantially justified, courts should employ a test that is "slightly more stringent than 'one of reasonableness.'" *Id.* at 558 (footnote omitted).[11]

■ The defendants would have us quickly dispose of the fee award in this case by holding that the substantial justification for their position is conclusively evidenced by the fact that they prevailed before the District Court in *Martin I.* We reject this position as patently absurd. As has been recently noted, adoption of any such *per se* rule would mean that "attorney's fees never could be awarded in favor of an appellant against the government." *Broad Avenue Laundry & Tailoring v. United States*, 693 F.2d 1387, 1392 (Fed. Cir.1982). The defendants' argument for narrowing the EAJA in this manner is unconvincing. In *Spencer*, we recognized the critical role played by courts of appeals in determining whether the government's position was substantially justified. *Spencer*, 712 F.2d at 563. The defendants have not pointed to a single precedent, nor anything in the language or legislative history of the EAJA, that might justify abdicating this responsibility. Consequently, we adhere to the view we recently expressed in *Cinciarelli v. Reagan*, 729 F.2d 801, 806 (D.C.Cir. 1984), that although "a trial victory might be evidence that the government's position was not frivolous, the court deciding the EAJA case must independently evaluate the position to determine whether it was substantially justified."[12]

Our review of the trial court's decision to award attorneys' fees in this case has convinced us that the award should be affirmed in part and reversed in part. Specifically, we find that the defendants' position on the plaintiffs' First Amendment claim was not substantially justified, and hence we agree with the District Court that a fee award is appropriate with respect to this claim. However, we do not agree with the court's conclusion that the plaintiffs' unsuccessful advocacy of the whistleblower claim cannot be severed from the First Amendment claim, and hence we reverse the award insofar as it includes time spent

9. *Accord Cinciarelli v. Reagan*, 729 F.2d 801, 804 (D.C.Cir.1984); *Del Mfg. Co. v. United States*, 723 F.2d 980, 983 (D.C.Cir.1983); *Environmental Defense Fund, Inc. v. EPA*, 716 F.2d 915, 920 (D.C. Cir.1983).

10. *Accord Cinciarelli*, 729 F.2d at 804; *Environmental Defense Fund, Inc.*, 716 F.2d at 920 n. 9.

11. *Accord Cinciarelli*, 729 F.2d at 804; *Del Mfg. Co.*, 723 F.2d at 985; *Environmental Defense Fund, Inc.*, 716 F.2d at 920.

12. Additionally, in the instant case the lower court did *not* endorse the defendants' litigation position. As we explain *infra*, the defendants' litigation position before the lower court was that the broad restrictions imposed by the February 24 memorandum could be enforced. The trial court repudiated this position, holding that the restrictions were constitutional "as long as [they are] very strictly limited to the narrow scope of the March 4, 1982 clarification memorandum." *Martin I*, No. 82–0587, mem. op. at 6 (D.D.C. Mar. 19, 1982).

pursuing the whistleblower claim. Finally, we hold that on remand the District Court must reconsider whether the plaintiffs were properly denied a fee award for time spent on Privacy Act issues.

## A. *The First Amendment Claim*

The threshold inquiry in determining whether the government's litigation position was substantially justified is identification of that position. This is no easy matter in the instant case, for throughout these proceedings the defendants have vacillated on the scope of the restrictions imposed on the plaintiffs. In doing so, the defendants appear to have characterized the restrictions in whatever manner seemed expedient at a particular point in the litigation, often with little regard for the express terms of the restraints *actually* imposed on the plaintiffs.

■ Because the defendants have not maintained a consistent position in these proceedings, we have reviewed the record with great care to identify their position

before the trial court in *Martin I* as well as their position in the appeal of that decision (*Martin II*). This bipartite analysis is appropriate because the fee award in this case includes time spent at both the trial and appellate levels. *See* Statement of Services Rendered By Karr & Lyons As Counsel For Plaintiffs (Nov. 15, 1982). We are convinced that many of the considerations expounded in *Spencer* favor separate determinations as to the substantial justification for the defendants' position at each level.[13] By judging the substantiality of the government's position in the particular proceeding at issue, courts will encourage the government to determine whether to appeal based on the facts and law pertinent to that appeal.[14] Further, this approach will induce the government to "evaluate carefully each of the various claims" it might make on appeal and "assert only those that are substantially justified. The net result would be more sensitive and effectual promotion of the objectives of the EAJA." *Id.* at 557.[15]

**13.** *Cf. Ellis v. United States,* 711 F.2d 1571, 1576 (Fed.Cir.1983) ("because the EAJA's primary purpose is to eliminate legal expense as a barrier to challenges of unreasonable governmental action, it is proper for us to assess attorney's fees and costs against the government for a separate phase or portion of the litigation in which its position lacks substantial justification—even though the government may have adopted wholly reasonable positions in other facets of the case.").

**14.** The following examples illustrate the value of this approach:

(1) The government's factual position at the trial level is substantially justified, but ultimately rejected by the trial court. Although the government challenges the court's factual findings on appeal, this challenge borders on the frivolous because it in no way suggests that the trial court's factual determinations were clearly erroneous. Under the rule adopted here, the plaintiff can recover for time spent responding to the government's meritless appeal. Note that similar illustrations could be provided for the countless situations in which a trial court's decision is reviewed under the "abuse of discretion" standard.

(2) An appeal advances issues that are distinct from those pursued below; for example, it may be argued that the case has now become moot. *Cf. Spencer,* 712 F.2d at 554 (indicating that

government may refrain from advancing colorable mootness argument if "position" that must be substantially justified is that taken in underlying action). If the government's mootness argument on appeal is substantially justified, no attorneys' fees should be awarded for time spent on the appeal.

(3) Subsequent to the trial court's decision the pertinent legal rules are altered in a manner adverse to the government. The effect of such a change often is that, while the government's action was "substantially justified" when originally undertaken, persistence in defending that action in court is unjustifiable. In such a situation, if counsel for the United States stubbornly continues litigating the case, compelling the private party to incur attorneys' fees before eventually prevailing, it seems clear that the objectives underlying the EAJA would be served by shifting those costs to the government.

*Id.* at 555. The rule adopted here would make the government liable for attorneys' fees incurred during this appeal.

**15.** As for the standard to be employed in resolving requests for fees incurred in the course of obtaining fees under the EAJA, the court in *Cinciarelli v. Reagan,* 729 F.2d 801 (D.C.Cir. 1984), expressed a view in favor of "a *per se* rule that the government pays fees for EAJA litigation whenever it defends an EAJA suit on the basis that its position in the action on the merits

Although in this appeal the defendants have not explicitly identified their litigation position before the trial court in *Martin I*, their brief implies that they merely defended the constitutionality of the restrictions as more narrowly delineated in the March 4 memorandum. This characterization finds absolutely no support in the record. To the contrary, as we indicated in *Martin II*, the record of the trial court proceedings in *Martin I* clearly indicates that the defendants sought judicial approval of the broad restrictions contained in the February 24 memorandum. Indeed, following the lower court's opinion, defendant Lauer sent the plaintiffs a memorandum expressly stating that the restrictions contained in the February 24 memorandum were in effect. As we have explained, these restrictions forbade the disclosure of *any* government information absent preclearance by the government.

■■■■ We have no trouble concluding that the defendants were not substantially justified in arguing that the plaintiffs' communication with counsel could constitutionally be limited in this manner. It is well-established that restrictions on the First Amendment rights of public employees are to be tested by balancing the employees' interest in the speech against the government's interest in the restrictions. *See, e.g., Pickering v. Board of Education*, 391 U.S. 563, 568, 88 S.Ct. 1731, 1734, 20 L.Ed.2d 811 (1968). The defendants have not even argued in this appeal that such a balancing favors the imposition of restric-

tions on the disclosure of *any* government information to counsel. Indeed, given our holding in *Martin II* that the government did not have a sufficient interest to justify even a much narrower restriction on the disclosure of FOIA-exempt material, *Martin II*, 686 F.2d 24, 34–35 (D.C.Cir.1982), we would be hard-pressed to find that the government was substantially justified in asserting that a very similar interest warranted a prior restraint on disclosure of *any* government information.

In reaching this conclusion, we wish to emphasize two considerations. First, as the plaintiffs have protested throughout these proceedings, the defendants have never made any showing that a substantial government interest is served by limiting the First Amendment rights of these plaintiffs. Instead of demonstrating the nature of the information that the plaintiffs might disclose, and showing the likelihood that this disclosure would extend beyond the lawyer-client relationship or that disclosure to counsel would be harmful, the defendants have chosen simply to rely on self-serving and conclusory assertions that the plaintiffs might release sensitive material. Second, the defendants have not seriously argued that the government's interest could not have been served adequately by far less restrictive regulation of the plaintiffs' speech.[16] Indeed, at the later stages in the proceedings the defendants were content to argue that the government's interest was protected by the narrower re-

---

was substantially justified and loses." *Id.* at 810. Although the plaintiffs sought fees for time spent preparing the application for fees (2.5 hours), this constituted scarcely 1% of the fee award in this case and did not include time spent on this issue subsequent to the application. Moreover, the defendants have not challenged this fraction of the award on any ground distinct from those pertaining to the other EAJA questions discussed here, and we decline to raise such concerns *sua sponte.*

**16.** *See generally NAACP v. Alabama*, 377 U.S. 288, 307, 84 S.Ct. 1302, 1313, 12 L.Ed.2d 325 (1964) ("This Court has repeatedly held that a governmental purpose to control or prevent activities constitutionally subject to state regulation may not be achieved by means which

sweep unnecessarily broadly and thereby invade the area of protected freedoms."); *Shelton v. Tucker*, 364 U.S. 479, 488, 81 S.Ct. 247, 252, 5 L.Ed.2d 231 (1960) ("even though the governmental purpose be legitimate and substantial, that purpose cannot be pursued by means that broadly stifle fundamental personal liberties when the end can be more narrowly achieved") (footnote omitted). Most recently, in *Members of the City Council v. Taxpayers for Vincent*, —— U.S. ——, ——, 104 S.Ct. 2118, 2130, 80 L.Ed.2d 772 (1984), the Court indicated that "[t]he incidental restriction on expression which results from the City's attempt to accomplish such a purpose [eliminating visual clutter] is considered justified as a reasonable regulation of the time, place, or manner of expression if it is narrowly tailored to serve that interest."

**46**

strictions imposed by the March 4 memorandum. Under these circumstances, we conclude that the defendants plainly have not carried their burden of showing that the defense of the February 24 restrictions in *Martin I* was substantially justified.

Nor do the defendants fare any better when their position on appeal in *Martin II* is examined. Although in *Martin II* they defended a narrow construction of the restrictions, this position was not substantially justified. Most importantly, given the defendants' explicit reimposition of the February 24 restrictions following the trial court's decision, *see* Memorandum From Charles Lauer To Emily Martin & David West (Mar. 19, 1982), there was no tenable basis for the defendants' argument on appeal that the plaintiffs were only precluded from disclosing FOIA-exempt and Privacy Act material without preclearance. The plaintiffs clearly were not in a position to communicate *any* government information to their attorneys without preclearance, for—as the defendants admonished—they were acting "at their peril if they release[d] what turn[ed] out to be exempted information without authorization." Defendants' Brief, p. 40 (brief in *Martin II*).

Moreover, even assuming *arguendo* that the plaintiffs were prohibited only from disclosing information subject to the Privacy Act or falling within an FOIA exemption, on the facts of this case no government interest was served by a proscription of this breadth. In *Martin II*, we pointed out that the across-the-board restriction on disclosure of FOIA-exempt material would prevent communication concerning certain internal personnel matters "on grounds of administrative burden" even though this "exemption certainly does not represent a government interest in preventing employees from openly discussing such 'government information.'" *Martin II*, 686 F.2d

at 34. Even the defendants conceded in *Martin II* that there was no justification for an across-the-board restriction, for they stated that if the plaintiffs "simply wish to disclose this type of [innocuous] material [on internal personnel matters] and compile it themselves, *the agency has no interest in prohibiting this activity.*" Defendants' Brief, p. 34 n. 20 (brief in *Martin II*) (emphasis added).

In this appeal, the defendants seek to avoid the implications of this concession by arguing that in *Martin II* they "clearly stated that the Lauer memoranda were never meant to cover the type of FOIA Exemption 2 material that caused the Court [of Appeals] such concern." Defendants' Reply Brief, p. 11 n. 4 (citation omitted). This statement surely came as a surprise to the plaintiffs, for none of the defendants' prior memoranda, nor the District Court's narrowing interpretation of the memoranda in *Martin I*, remotely suggested that the plaintiffs were free to disclose some FOIA-exempt material while at the same time prohibited from disclosing other FOIA-exempt material. The First Amendment clearly does not tolerate such *post facto* recharacterizations of restrictions on speech, particularly when employees have been warned that the government "will not hesitate to take immediate and appropriate disciplinary action to assure that the Government's interests are protected." Memorandum From Charles Lauer To Emily Martin & David West 3 (Feb. 24, 1982).[17]

In sum, for all of the foregoing reasons, the defendants' assorted litigation positions in these proceedings did not provide a reasonable basis for upholding the restrictions at issue. Because the defendants have failed to establish that their positions were substantially justified, we conclude that the trial court properly awarded attorneys'

17. *See generally Baggett v. Bullitt*, 377 U.S. 360, 373 n. 10, 84 S.Ct. 1316, 1323 n. 10, 12 L.Ed.2d 377 (1964) ("'[S]tatutes restrictive of or purporting to place limits to those [First Amendment] freedoms must be narrowly drawn to meet the precise evil the legislature seeks to curb ... and ... the conduct proscribed must be defined spe-

cifically so that the person or persons affected remain secure and unrestrained in their rights to engage in activities not encompassed by the legislation.'") (quoting *United States v. Congress of Indus. Orgs.*, 335 U.S. 106, 141–42, 68 S.Ct. 1349, 1366–67, 92 L.Ed. 1849 (1948) (Rutledge, J., concurring)).

fees under the EAJA for time spent on the First Amendment claim.[18]

### B. *The "Whistleblower" Claim*

■ We do not think it was appropriate for the trial court to award attorneys' fees for time spent unsuccessfully in pursuit of the "whistleblower" claim. This court recently explained:

"In some cases a plaintiff may present in one lawsuit distinctly different claims for relief that are based on different facts and legal theories." Legal work in such cases can be easily compartmentalized. In such cases where "the claims asserted 'are truly fractionable,' " counsel should be compensated only for work on those distinct claims that prevailed.

*Action on Smoking and Health v. CAB,* 724 F.2d 211, 215–16 (D.C.Cir.1984) (footnotes omitted) (quoting *Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 1940, 76 L.Ed.2d 40 (1983) & *Copeland v. Marshall,* 641 F.2d 880, 892 n. 18 (D.C.Cir.1980) (en banc)).

We are convinced that this is such a case. Although certain undisputed facts (principally the fact that Lauer imposed restrictions on the plaintiffs) were common to the First Amendment and whistleblower claims, these claims overwhelmingly involved distinct legal and factual issues. 5 U.S.C. § 2302(b)(8) prohibits certain employees from taking a personnel action against any employee "as a reprisal for—

(A) a disclosure of information by an employee or applicant which the employee or applicant reasonably believes evidences—

(i) a violation of any law, rule, or regulation, or

(ii) mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety,

if such disclosure is not specifically prohibited by law and if such information is not specifically required by Executive order to be kept secret in the interest of national defense or the conduct or foreign affairs ....

5 U.S.C. § 2302(b)(8) (1982). *See also id.* § 2301(b)(9). Resolution of the whistleblower claim in the instant case would have required factual determinations as to whether the memoranda constituted reprisal, whether the plaintiffs *reasonably* believed that one of the conditions enumerated in the statute was present, and whether the disclosure was specifically prohibited by law. None of these factual inquiries was required for resolution of the First Amendment issue as framed by the plaintiffs as well as this court in *Martin II.* By the same token, the legal issues raised by the First Amendment claim were largely distinct from those implicated by the whistleblower claim. In these circumstances, the purposes of the EAJA would not be well served by awarding the plaintiffs attorneys' fees for time spent on the unsuccessful pursuit of the whistleblower claim.[19]

We recognize that even when a lawsuit involves distinct claims, there inevitably may be *some* overlap in the requisite factual and legal analysis. If some portion of the plaintiffs' time was spent on activities in furtherance of the First Amendment claim but was also relevant to the whistleblower claim, the plaintiffs' entitlement to

---

**18.** We note that this is not a case in which the government on appeal has done no more than defend a district court decision in its favor, and we express no view as to the circumstances in which such a defense would be substantially justified. Here, the defendants have conceded that no interest is served by a restriction as broad as that articulated by the lower court. Additionally, by arguing that the restriction did not extend to all FOIA-exempt material the defendants have departed from the construction adopted by the lower court.

**19.** As this court implicitly recognized in *Martin II, see Martin II,* 686 F.2d at 29 n. 19, and as is clear from the plaintiffs' brief, Plaintiffs' Brief, pp. 34–35 n. 24, the reprisal provisions constituted the core of the plaintiffs' Civil Service Reform Act claim. To the extent that the claim implicated other provisions in the Civil Service Reform Act, the critical issues involved the construction of the Act. The inquiry to resolve such issues was easily severable from that relating to the First Amendment claim.

a fee award for the pursuit of the former claim should encompass such time. However, the attorneys' fee award should not include compensation for work on the whistleblower claim that was only tangentially related to the First Amendment claim.

Because the District Court did not distinguish between these two claims and improperly awarded fees for time spent solely on the whistleblower claim, its decision on that point must be reversed. On remand, the lower court should determine the fees attributable to the First Amendment claim in accordance with the principles articulated here and modify its award accordingly.

## C. *The Privacy Act Issue*

On remand the District Court should also reconsider its decision to deny attorneys' fees for time spent on the Privacy Act issue. The record clearly reveals that the Privacy Act "claim" was raised *by the defendants* as a partial justification for the challenged restrictions, and that the plaintiffs thereby were forced to respond to it. The case law establishes that a prevailing plaintiff is entitled to recover attorneys' fees under the EAJA for time spent responding to defenses that are not substantially justified. *Cinciarelli v. Reagan*, 729 F.2d 801, 805 (D.C.Cir.1984) ("if some but not all of the government's defenses are substantially justified the prevailing party should be compensated for combatting those that are not").

On the record before us, there is nothing to indicate that the defendants' assertion of the Privacy Act defense was substantially justified. The record unequivocally reflects the plaintiffs' early disavowal of any interest in, or possession of, Privacy Act material. *See* note 5, *supra*, and accompanying text. When we previously considered this case in *Martin II*, the court noted that there did not appear to be a dispute over such material and remanded to the trial court for a further determination on this matter. In subsequent settlement negotiations between the parties, the defendants finally asked some particular

questions of the plaintiffs and it became even clearer that the Privacy Act was a bogus issue. At oral argument before us during this appeal, the defendants conceded that they could have made these inquiries early in the trial proceedings. Instead of doing so, they raised the Privacy Act defense (without any legitimate basis for concern), argued its relevance, and forced the plaintiffs to spend time responding to it.

On these facts, we can discern no reason for denying the plaintiffs compensation for time spent on this issue. However, the issue was not fully aired before us. Because there may be additional facts indicating that the defendants' position on this issue was somehow substantially justified, we remand to the District Court so that it may reconsider this aspect of its decision.

### Conclusion

The District Court's attorneys' fee award is affirmed in part and reversed in part. This case is remanded to the District Court for further proceedings consistent with this opinion.

*So ordered.*

HAYNSWORTH, Senior Circuit Judge, dissenting:

I respectfully dissent.

In awarding fees, the district judge did not apply the standards of the Equal Access to Justice Act. He relied instead upon the criteria of the Civil Rights Attorneys' Fees Awards Act, 42 U.S.C.A. § 1988. Under the circumstances, it seems to me that the most appropriate thing for an appellate court to do would be to vacate the award and remand the case to the district court for application of the appropriate standards to the facts of the case, with which, of course, the district court is intimately acquainted.

If we are to weigh the positions of the parties in light of the relevant standards, however, I would conclude that the positions of the government were substantially justified.

The plaintiffs, Martin and West, are high level managers, apparently having access to documents and materials not producible under the Freedom of Information Act. The Department's initial concern was clearly that the plaintiffs should not produce for use of their lawyers materials which were exempt from compulsory production under the FOIA, and that they should not be the judges of any claim they might assert that specific materials were not exempt. In short, the Department's position seems to have been that these employees, who had declared their intention to participate in adverse litigation against the Department, should proceed as other private litigants must proceed, obtaining information in the pretrial discovery process, with an appropriate opportunity for the Department to assert any claim that particular material was within one or more of the exemptions of the FOIA.

On its face, this would seem to present no great First Amendment problem. Though the plaintiffs prevailed on their First Amendment claim in *Martin II, Martin v. Lauer*, 686 F.2d 24 (D.C.Cir.1982), they did so only because the court reasoned that the lawyer was ethically bound not to disclose any information obtained from her clients without their authorization, and her clients, the employees, could be prohibited from authorizing any disclosure of exempt information. Were that not so, the court said, the balance might well have been tipped the other way. Thus, the Department's understandable concern about public disclosure was substantially obviated.

I do not understand that the Privacy Act came into the case as a proffered defense to the plaintiffs' First Amendment claim. The plaintiffs prevailed on the First Amendment claim in *Martin II*, though the court did not decide the Privacy Act question. Information protected by the Privacy Act was simply another category of information the Department sought to protect against disclosure, and that presented to the court in *Martin II* a question which the court characterized as difficult, notwithstanding the fact that disclosure could be limited to the plaintiffs' lawyer. It declined to decide the question, remanded it to the district court with the suggestion that there might be no real controversy about it.

This was evidently based upon statements by the plaintiffs' lawyer that she wanted no information protected by the Privacy Act, but she and the plaintiffs continued to litigate the question. They were not forced to do that. They could have ended that phase of the controversy by tendering a stipulation to the effect that no information protected by the Privacy Act would be submitted to or received by her. That was substantially what occurred on remand. As a result, the plaintiffs were not prevailing parties within the meaning of the EAJA, and on this basis alone are not entitled to attorneys' fees on this issue.

The Department had no means of knowing what information might be tendered to the plaintiffs' lawyer. It seems to me it was thoroughly justified in asserting the position that no material protected by the Privacy Act should be submitted to her. The fact that the Privacy Act question remained in litigation as long as it did seems to me the fault of the plaintiffs rather than the fault of the Department. Had the plaintiffs consented to an order forbidding any violation of the Privacy Act, the matter would have been put to rest. Without that kind of enforceable disclaimer, however, it seems to me the Department was justified in its position that the court should forbid disclosure of information in violation of the Privacy Act.

While I would prefer to have the district court pass upon these matters in the first instance, it seems to me that all of the litigating positions of the Department in this case were justified within the meaning of the EAJA.