Thurman S. **ALPHIN**, Petitioner,

v.

**NATIONAL TRANSPORTATION SAFETY BOARD**, Respondent, Administrator of the Federal Aviation Administration, Intervenor.

No. 86–1662.

United States Court of Appeals, District of Columbia Circuit.

Argued Nov. 20, 1987.

Decided Feb. 26, 1988.

Paul Victor Jorgensen, Washington, D.C., for petitioner.

Allan H. Horowitz, with whom Marguerite L. Price, Washington, D.C., was on the brief for intervenor. William H. Gonzalez, Washington, D.C., also entered an appearance for intervenor, F.A.A.

Before WALD, Chief Judge, SENTELLE, Circuit Judge, and GIBSON *, Senior Circuit Judge.

Opinion for the Court filed by Senior Circuit Judge FLOYD R. GIBSON.

FLOYD R. GIBSON, Senior Circuit Judge:

Thurman S. Alphin appeals from an order of the National Transportation Safety Board (NTSB or Board) denying his application for attorney's fees and costs under the Equal Access to Justice Act, 5 U.S.C. § 504 (EAJA). The sole issue on appeal is whether the Administrator of the Federal Aviation Administration (FAA) was substantially justified in initiating and continuing proceedings against Alphin resulting in the suspension of his Inspector's Authorization Certificate. The NTSB found that the Administrator was substantially justified and denied Alphin's application. We reverse and remand with directions to reconsider the application for a possible award of partial fees and costs.

## I. BACKGROUND

In the fall of 1979, Tri–State Airways, Inc., a flying school located in New Jersey, brought two Cessna 150 airplanes to Alphin Aircraft for engine overhauls. At the conclusion of the overhauls the engines were signed off—approved as airworthy— by Thurman Alphin and returned to Tri–State.

Shortly thereafter, Tri–State began experiencing problems with the airplanes such as engine vibration and roughness and loss of power. The airplanes were returned to Alphin Aircraft several times, but the problems persisted. Tri–State contacted an FAA Inspector, Raymond Whitehead, about the problems and he tagged the engines for teardown.

On March 19, 1980 the engines were disassembled at Penn Yan Aero Service, an FAA certified engine overhaul facility. The work was performed by a Penn Yan employee in the presence of FAA Inspector Albert Lengyel. Lengyel prepared a written report listing the mechanical problems found during the teardowns.

With regard to engine serial # 252402 Lengyel reported: 1) low compression in cylinder number one; 2) out of round cam shaft lobe measurements; 3) exhaust valve guide measurements "out of limits"; 4) an upside-down valve spring; 5) excessive exhaust valve clearance on cylinder number two; 6) all rocker arm bushings "out of limits"; 7) worn clutch parts; 8) failure to comply with several service bulletins; and 9) a cracked crankshaft.

With regard to engine serial # 253829–A–48 Lengyel reported: 1) number one cylinder was steel but pistons and rings were designed for chrome cylinder; 2) four valve guide measurements "out of limits"; 3) excessive valve clearances on three valves; 4) all but two rocker arm bushings "out of limits"; 5) worn clutch parts; 6) excessive crankshaft to camshaft gear tooth clearance; and 7) carburetor not overhauled.

The report was forwarded to Whitehead who recommended that Alphin's Inspector's Authorization Certificate be suspended. In August 1980 the FAA issued an order suspending Alphin's certificate for sixty days on the grounds that he had performed two substandard engine overhauls and had operated a certified repair station without a Repair Station Certificate. The order was later amended to charge Alphin with signing off the substandard overhauls, rather than performing them himself.

---

* Of the United States Court of Appeals for the Eighth Circuit, sitting by designation pursuant to 28 U.S.C. § 294(d).

Alphin appealed the suspension to the NTSB and a hearing was held before an administrative law judge. The ALJ found that Alphin did not need a Repair Station Certificate to sign off the engines because he held an Inspector's Authorization Certificate. The ALJ also found, however, that Alphin had improperly signed off the two engines and ordered a forty-five day suspension. Alphin's appeal to the NTSB was denied.

While the administrative proceedings were pending, Tri–State filed a lawsuit against Alphin Aircraft in New Jersey state court. Lengyel testified as an expert on behalf of Tri–State, but his testimony was inconsistent with his testimony before the ALJ. Based on Lengyel's new testimony, the NTSB granted Alphin a rehearing before an ALJ.[1] Upon rehearing the ALJ once again found that the overhauls were substandard.

On appeal the NTSB reversed. The Board found that the FAA had failed to prove that the crack in the crankshaft in # 252402 existed at the time Alphin Aircraft overhauled the engine. The crack could have developed during the eighty-three hours the aircraft was operated after Alphin's overhaul. Also, Alphin could not be held responsible for the out-of-round camshaft because the flaw was not one which should have been detected during the overhaul. The test which would have disclosed the flaw is not mandated and the overhaul manual does not provide cam lobe measurements. Similarly, the Board found

that compliance with the service bulletins was not mandatory and the overhaul procedure does not require servicing the clutch assemblies. Further, several of the alleged deficiencies—a forging lap on the connecting rod cap, an upside down valve spring, and a steel cylinder—would not affect engine performance.

The Board also considered the allegedly excessive valve train measurements and concluded that the FAA had failed to prove that any problems existed. The notations that certain measurements were "out of limits" did not establish a basis from which the Board could conclude that the parts were excessively worn. Since the mechanic who took the measurements was not present to testify, it could not be determined whether the measurements were taken accurately. Also, the go-no-go gauges which were used were machined to new rather than overhauled engine specifications. Therefore, Lengyel's report, at best, indicated that the engines no longer had the measurements found in new engines—a fact irrelevant to whether the overhauls were correctly performed.

With regard to the measurements which were specifically recorded in Lengyel's report, the Board found that the FAA had failed to prove that the excess clearances did not result from the hours of service each airplane accumulated after Alphin's overhaul and before Lengyel's inspection.

Alphin's timely application under the EAJA for attorney's fees and costs in the

---

1. In its order granting Alphin's petition for rehearing the NTSB stated, in part:

The asserted deficiencies in the powerplants at issue here involved internal engine components, chiefly in the valve train, which, according to the FAA inspector, exhibited wear in excess of maximum service limits. To reach such a determination, precise measurements, involving hundredths or even thousandths of an inch, must be made and compared with the specifications listed for the component in the overhaul manual for the engine. Although the FAA inspector did not himself make any such measurements on the two engines, he recorded the results of measurements taken by another mechanic during the disassembly process. In response to respondent's efforts, at the hearing, to verify the basis for inspector's determination that specif-

ic parts were out of tolerance or exceeded specifications, the inspector repeatedly stated that he and the mechanic had consulted the overhaul manual. Respondent's petition asserts that the inspector's testimony in this connection is contradicted by his subsequent testimony, in a state court trial, wherein the inspector stated that the manual was not available during the teardowns and that he did not know whether the mechanic had referred to the manual....

The inspector's testimony in the state action raises a genuine issue as to the basis for, and the reliability of, his judgment that various deficiencies existed in the two engines. We are persuaded, in such circumstances, that a rehearing is warranted by the showing made in respondent's petition.

(Footnotes omitted).

amount of $135,525 was denied by the ALJ and on appeal by the NTSB. Alphin then appealed to this court.

## II. DISCUSSION

The EAJA provides, in relevant part:

(a)(1) An agency that conducts an adversary adjudication shall award, to a prevailing party other than the United States, fees and other expenses incurred by that party in connection with that proceeding, unless the adjudicative officer of the agency finds that the position of the agency was substantially justified or that special circumstances make an award unjust. Whether or not the position of the agency was substantially justified shall be determined on the basis of the administrative record, as a whole, which is made in the adversary adjudication for which fees and other expenses are sought.

.   .   .   .   .

(b)(1) For the purposes of this section—

.   .   .   .   .

(E) "position of the agency" means, in addition to the position taken by the agency in the adversary adjudication, the action or failure to act by the agency upon which the adversary adjudication is based; except that fees and other expenses may not be awarded to a party for any portion of the adversary adjudication in which the party has unreasonably protracted the proceedings.

5 U.S.C. § 504 (Supp. III 1985).

■ We are troubled by the language used by the NTSB when it denied Alphin's application for fees and costs. Having read and reread the Board's order many times, we are unable to reach any conclusion other than that the NTSB incorrectly evaluated whether the FAA was substantially justified. In several places the Board indicated that the FAA was substantially justified because the evidence against Alphin, unrebutted and standing alone, was sufficient to establish a violation. For example, when discussing the FAA's burden on the EAJA application the Board stated

that *"excluding consideration of a respondent's rebuttal case,* the Administrator must produce enough substantial, probative, and reliable evidence as is necessary to permit a finding that the violations charged in fact occurred." *Application of Thurman S. Alphin,* N.T.S.B. Order EA–2342 at 3 (1986) (emphasis added). The Board further stated that its finding that Alphin had not violated maintenance performance standards "did not represent a judgment that the Administrator had not produced enough evidence to support a charge under the regulation, only that it was not sufficient to support the charge in light of all of the evidence adduced by the parties in this case." *Id.* at 5.

Finally, the Board stated that the FAA's reliance on Lengyel's report was not unreasonable because opinion testimony of FAA inspectors is usually sufficient to establish violations. "[P]resumably [it] would have been considered sufficient here had either the inspector taken these measuements [sic] himself or required that the mechanic who did take them use tools capable of indicating not just whether a limit or tolerance has been exceeded but also by how much." *Id.* at 6.

These passages and the Board's treatment of the evidence indicate that the Board failed to view the "record as a whole" when it determined that the FAA was substantially justified. The Board concluded that because the FAA had presented enough evidence to establish a violation, it was substantially justified in initiating and continuing the proceedings against Alphin. This is not the standard required by the EAJA, however. The Act expressly requires an examination into "the administrative record, as a whole." Any lesser examination—such as viewing the government's case in a vacuum, "excluding consideration of a respondent's rebuttal case," would defeat the purposes of the EAJA.

For example, if an agency were to bring an adversarial action against a private individual which was slightly stronger than frivolous, the agency would prevail if the respondent presented no defense. However, if the respondent successfully defend-

ed himself with overwhelming evidence, we would not deny his EAJA application solely because the agency would have prevailed had he not presented a defense. To the contrary, even if the agency would have prevailed in an uncontested proceeding, fees should be awarded if, in light of *all* the evidence known to the agency, its case was not substantially justified.

We also believe the NTSB erred in failing to consider whether the FAA was substantially justified in basing its order of suspension in part on allegations which the Board itself found to be without merit. For example, in its decision reversing the order of suspension, the Board disposed of several alleged deficiencies—such as noncompliance with service bulletins, an upside down valve spring, and a chrome cylinder—in a footnote. Yet, in its decision on the EAJA application the Board did not discuss these allegations. Although we agree with the Board that the cracked crankshaft alone validated the FAA's decision to proceed against Alphin, we can not condone the shotgun approach used by the FAA. Simply because the cracked crankshaft, if proved, could have supported the suspension, the FAA is not entitled to tack on other meritless allegations. Each allegation had to be disproved by Alphin, because absent official notice that it was meritless, the allegation would not disprove itself.

We believe the NTSB should have examined Alphin's application to determine if a partial award was appropriate, with respect to each allegation, *Cinciarelli v. Reagan,* 729 F.2d 801, 804–05 (D.C.Cir.1984); and in light of the knowledge known by the FAA during the various stages of the proceedings. *Martin v. Lauer,* 740 F.2d 36, 44 (D.C.Cir.1984).

In *Cinciarelli* this court stated that "[p]artial awards are contemplated within EAJA's statutory scheme; if some but not all of the government's defenses are substantially justified the prevailing party should be compensated for combatting those that are not." 729 F.2d at 804–05. Similarly, in *Martin* we stated that:

> We are convinced that many of the considerations expounded in *Spencer [v.*

*NLRB,* 712 F.2d 539 (D.C.Cir.1983)] favor separate determinations as to the substantial justification for the defendants' position at each level. By judging the substantiality of the government's position in the particular proceeding at issue, courts will encourage the government to determine whether to appeal based on the facts and law pertinent to that appeal. Further, this approach will induce the government to 'evaluate carefully each of the various claims' it might make on appeal and 'assert only those that are substantially justified. The net result would be more sensitive and effectual promotion of the objectives of the EAJA.'

740 F.2d at 44 (footnotes omitted) (quoting *Spencer v. NLRB,* 712 F.2d at 557). Because the NTSB failed to evaluate the FAA's position based on the record as a whole and because each allegation and each step of the proceedings was not separately evaluated we remand the case back to the NTSB for reconsideration.

On remand the Board should determine if the FAA "acted slightly more than reasonably," *Federal Election Com'n v. Rose,* 806 F.2d 1081, 1087 (D.C.Cir.1986), when it initially sought to suspend Alphin's Inspector's Authorization Certificate and subsequently when it persisted despite knowing that Lengyel's report was based largely on the opinion of an unknown mechanic who used improper gauges. Clearly, the FAA had an obligation to proceed against Alphin when it learned of the cracked crankshaft and this flaw alone validated the FAA's decision to commence the proceeding, but as stated previously, the EAJA inquiry should not end there.

Chronology plays an important role in this case. As the case proceeded and the reliability of Lengyel's report became questionable, it becomes less clear whether the FAA was substantially justified in basing its case on that report. The FAA may have been obligated to change its position within a reasonable time after learning that problems existed in the report. However, we are reluctant, on the record before us, to set forth an exact date after which the FAA no longer was substantially justified

in pressing various theories, although a date may exist and should be pursued by the Board on remand. Further, what constitutes a reasonable time should initially be determined by the Board. We realize that this inquiry will be complicated by the fact that the ALJ and the NTSB heard the merits on more than one occasion, but the EAJA demands that each allegation made by the FAA be evaluated at each step of the proceedings when new or additional evidence indicated that its original allegations lacked substance or were in error. What was a substantially justified position prior to the initial hearing before the ALJ may not have been such years later when the NTSB finally reversed the order of suspension.

## III. CONCLUSION

Because we believe the NTSB erred in considering Alphin's EAJA application, we remand this case back to the Board for a more in depth evaluation of the FAA's position at each step of the proceedings, to determine whether a partial award is appropriate, and the amount thereof.