15 F.3d 1126
 304 U.S.App.D.C. 395
 James Angus McDONALD, et al., Appellees/Cross-Appellants,
v.
Robert WASHINGTON, Ph.D., et al.,
United States of America, et al., Appellants/Cross-Appellees.
Alma STREICHER, et al., Appellees/Cross-Appellants,
v.
Robert WASHINGTON, Ph.D., et al.,
United States of America, et al., Appellants/Cross-Appellees.
Alma STREICHER, et al., Appellants/Cross-Appellees,
v.
Robert WASHINGTON, Ph.D., et al.,
United States of America, et al., Appellees/Cross-Appellants.
James Angus McDONALD, et al., Appellants/Cross-Appellees,
v.
Robert WASHINGTON, Ph.D., et al.,
United States of America, et al., Appellees/Cross-Appellants.
 Nos. 92-5188, 92-5189, 92-5209 and 92-5232.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued Nov. 2, 1993.
Decided Feb. 15, 1994.
 
 Appeal from the United States District Court for the District of Columbia (Nos. 83cv03295 and 84cv01538).
 [304 U.S.App.D.C. 396] Mark Nebeker, Asst. U.S. Atty., Washington, DC, argued the cause for appellants/cross-appellees. With him on the briefs were J. Ramsey Johnson, U.S. Atty., John D. Bates and R. Craig Lawrence, Asst. U.S. Attys., Washington, DC. Leonard S. Rubenstein, Washington, DC, entered an appearance for appellant/cross-appellee Alma Streicher in Numbers 92-5209 and 92-5232.
 Albert W. Turnbull, Washington, DC, argued the cause for appellees/cross-appellants. With him on the briefs was John C. Keeney, Jr. Leonard S. Rubenstein, Washington, DC, entered an appearance for appellee/cross-appellant Alma Streicher, et al., in Numbers 92-5188 and 92-5189.
 Before: MIKVA, Chief Judge, WILLIAMS and HENDERSON, Circuit Judges.
 Opinion for the Court filed by Circuit Judge WILLIAMS.
 STEPHEN F. WILLIAMS, Circuit Judge:
 
 
 1
 The federal government challenges an award under the Equal Access to Justice Act ("EAJA") for legal services rendered to plaintiffs in civil commitment hearings before the D.C. Superior Court. Finding no causal connection between the incurrence of the fees and the position that the United States took without substantial justification, we reverse the judgment of the district court.
 
 
 2
 * * *
 
 
 3
 In 1983 a class of patients at St. Elizabeths Hospital filed a habeas corpus action in D.C. Superior Court against the United States, complaining that their continuing civil commitment violated a constitutional right to periodic reevaluation of their mental status. The United States petitioned for removal to a federal district court, which four years later found in favor of a subclass of the plaintiffs. The winning subclass consisted of patients committed before this court's decision in In re Ballay, 482 F.2d 648, 650 (D.C.Cir.1973), holding that civil commitment required proof of mental illness beyond a reasonable doubt (rather than "preponderance of the evidence", the standard previously applied). After Ballay but before the filing of suit, the Supreme Court held that the constitutionally required standard was "clear and convincing evidence", Addington v. Texas, 441 U.S. 418, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979), clearly more demanding than the one under which pre-1973 plaintiffs had been committed. The district court found that the Addington standard should be applied retroactively to those patients, and that the violation should be remedied by new hearings under the proper standard. Streicher v. Prescott, 663 F.Supp. 335 (D.D.C.1987).
 
 
 4
 Effective October 1, 1987, responsibility for St. Elizabeths shifted from the federal government to the District of Columbia. See 24 U.S.C. Secs. 225 et seq. (1988). The federal district court then substituted the appropriate District of Columbia official as defendant. On November 1, 1988, the court transferred the subclass action to the Superior Court of the District of Columbia, directing that each patient receive a commitment hearing under the procedures established by D.C. law--a hearing before the District of Columbia Commission on Mental Health, followed by a report to the Superior Court and review by that court at the option of any patient found subject to commitment. Order of Reference to the Superior Court of the District of Columbia, Nov. 1, 1988. The district court retained jurisdiction over the subclass, requesting the submission of status reports; at that time, it also retained jurisdiction over issues regarding the remainder of the class. The district court later granted a motion by the District of Columbia to remand the remaining issues to the Superior Court. Order, Mar. 20, 1992.
 
 
 5
 After the individual commitment hearings were resolved in favor of a great majority of the patients,[1] the subclass moved under EAJA to recover attorneys' fees from the federal government for class counsel expenses incurred in the proceedings before the district court (against the U.S.) and those under the aegis of the Superior Court [304 U.S.App.D.C. 397] (against D.C.).[2] The district court determined that the United States had not been substantially justified in opposing the plaintiffs' demand for reevaluation of patient status under the heightened constitutional standard; it assessed attorneys' fees incurred in both the district court and the commitment proceedings. Memorandum, May 15, 1990 ("Memorandum on Fees") at 4. After final judgment was entered on March 20, 1992, the United States appealed, challenging only that portion of the orders assessing fees incurred in the commitment hearings. It has paid all the other assessed fees.
 
 
 6
 The United States offers two basic theories for why the Superior Court proceedings ought to be severed from those in the district court. First, it argues that the substitution of the District of Columbia as the party with new responsibility for St. Elizabeths terminated its liability for fees incurred after 1987. Second, it argues that because the patients would have incurred attorneys' fees for commitment hearings even if the United States had completely acquiesced in their claim at the outset, there is simply no link between the part of the litigation on which the United States took a position that was found lacking substantial justification and the civil commitment expenses themselves.
 
 
 7
 If EAJA were the only pertinent statute, the transfer of responsibility for St. Elizabeths to the District of Columbia might well be grounds for denying recovery of the disputed fees. EAJA provides for award of fees "in any civil action ... brought by or against the United States," 28 U.S.C. Sec. 2412(d)(1)(A), and, despite literal compliance with this language, the substitution of the District for the United States might be taken to remove the post-transfer litigation from coverage. But Congress in the transfer statute provided that the United States would be "solely responsible for (1) all claims and causes of action against Saint Elizabeths Hospital that accrue before October 1, 1987 ... and (2) all claims that result in a judgment or award against Saint Elizabeths Hospital before October 1, 1987." 24 U.S.C. Sec. 225g(h) (1988). Here the case arose out of the United States's pre-transfer civil commitment procedures and its pre-transfer failure to remedy the constitutional defects in those procedures. So long as there was an adequate causal link between the conduct of the United States (in and out of court) before the transfer, and the ensuing remedial hearings, it would make sense to regard any legal obligations incurred as a result of those hearings as having "accrued" before the transfer. Thus, the United States's theory based on the transfer depends largely[3] on the strength of its other theory--that there is an inadequate causal link between the remedial hearings and the United States's "unjustified" position (using "unjustified" as shorthand for positions not "substantially justified", 28 U.S.C. Sec. 2412(d)(1)(A)). Accordingly we now turn to that contention.
 
 
 8
 In fact, the United States's unjustified resistance in federal district court did not in any way cause the plaintiffs to incur fees in the civil commitment hearings conducted under the aegis of the Superior Court. If the United States had responded to the complaint by an immediate offer to hold new commitment hearings under the Addington standard, and to release all plaintiffs not found commitable, the plaintiffs would have had to incur every dollar of the civil commitment expenses.
 
 
 9
 Plaintiffs respond to this in part by noting that the fee petition requested only fees paid to class counsel, not to the other attorneys who represented individual class members. [304 U.S.App.D.C. 398] But the special services rendered by class counsel are no more attributable to the United States's unjustified resistance than are the other services. For example, class counsel served in ten test cases that were used to accelerate and simplify the handling of the remaining patients. This appears to have been simply an economy of scale made possible by the fact that so many questionable commitments had accumulated over a long period. It was not an incremental expense at all, much less one due to the United States's having initially taken an unjustified position. It is important to note that the only unjustified resistance identified by the district court was in the United States's "steadfastedly opposing the motion for partial summary judgment", Memorandum on Fees at 4, not its behavior before the filing of the suit or any behavior in the commitment proceedings themselves.
 
 
 10
 Class counsel also supplied expert assistance on matters of mental health law, helped to improve communication with plaintiffs whose clarity had been dulled by long-term confinement, and helped to organize "woefully inadequate" documents. But there is no suggestion that the communicative abilities of patients or the state of documentation were in substantially better shape at the initial filing of suit in 1983 than at the time of transfer to Superior Court in 1988, such that prompt acquiescence in the complaint would have seriously reduced the need for these efforts.
 
 
 11
 Thus the United States's initial opposition to the complaint was not a "but for" cause of the civil commitment litigation expenses, nor a cause in the sense of having increased the probability that such expenses would be incurred.
 
 
 12
 From this lack of causal connection the United States derives the conclusion that the hearings are not part of the same "civil action" as the dispute in district court. Since EAJA provides only for award of fees incurred by a prevailing party "in any civil action ... brought by or against the United States", 28 U.S.C. Sec. 2412(d)(1)(A), it argues, the causal gap takes the hearings out of the initial civil action brought against the United States.
 
 
 13
 Framed as a gloss on the phrase "civil action", the United States's position is undermined by decisions holding that various proceedings on remand from district court to an agency fall within the initial "civil action". Thus in Sullivan v. Hudson, 490 U.S. 877, 109 S.Ct. 2248, 104 L.Ed.2d 941 (1989), the Court found that proceedings on remand to the Department of Health and Human Services were part of a "civil action" challenging the Department's prior adverse determination, saying that "where administrative proceedings are intimately tied to the resolution of the judicial action and necessary to the attainment of the results Congress sought to promote by providing for fees, they should be considered part and parcel of the action for which fees may be awarded." Id. at 888, 109 S.Ct. at 2256. Cf. Pennsylvania v. Delaware Valley Citizen's Council, 478 U.S. 546, 558-59, 106 S.Ct. 3088, 3094-95, 92 L.Ed.2d 439 (1986) (state administrative proceedings fall within an "action" under the fee shifting provision of the Clean Air Act). The Court's decision in Shalala v. Schaefer, --- U.S. ----, 113 S.Ct. 2625, 125 L.Ed.2d 239 (1993), has modified Hudson, holding that where a court's jurisdiction terminates on its order of a remand, the initial civil action comes to an end. Id. --- U.S. at ---- - ----, 113 S.Ct. at 2628-31. But that development does not aid the United States here; the district court retained jurisdiction and there is no claim that the retention was error.
 
 
 14
 The United States's basic argument about the absence of any causal link, however, seems to us sufficient regardless of the meaning of the phrase "civil action". Courts have recognized that the lack of any causal link between government obstruction in one phase of litigation, and the generation of costs in a later phase, makes it inappropriate to award EAJA fees for the second phase. Thus, in Kunz Construction Co. v. United States, 16 Cl.Ct. 431, 435 (1989), the court observed that where justified and unjustified government positions are taken in "discrete phases" of a litigation, such as ones on liability and damages, it may be an abuse of discretion not to "segregate" the fees. See also Ellis v. United States, 711 F.2d 1571 (Fed.Cir.1983) (awarding fees for merits of [304 U.S.App.D.C. 399] litigation, but not for damages phase); Williams v. Bowen, 966 F.2d 1259, 1261 (9th Cir.1991) (analyzing issue of substantial justification separately for "each stage of the administrative and court proceedings"). Similarly, we have refused to hold the United States liable for fees in those phases of litigation that occurred before its position lost its justification. Public Citizen Health Research Group v. Young, 909 F.2d 546, 552 (D.C.Cir.1990). Another application of the underlying principle is the use of partial EAJA awards where claims are easily severable and the government's position was justified on some of those claims. Alphin v. National Transportation Safety Board, 839 F.2d 817, 822 (D.C.Cir.1988); Smith by Smith v. Bowen, 867 F.2d 731 (2d Cir.1989). Here, the shifts of venue and of parties, on which the United States focusses a good deal, simply draw the dividing line between the separate phases with uncommon sharpness. The key is the causal gap, and the clarity of the separation serves mainly to eliminate any contention that the bother of distinguishing between the two phases justifies treating them as an aggregate.
 
 
 15
 It is quite true that the Supreme Court has observed that "[w]hile the parties' postures on individual matters may be more or less justified, the EAJA--like other fee-shifting statutes--favors treating a case as an inclusive whole, rather than as atomized line-items." Commissioner, INS v. Jean, 496 U.S. 154, 161-62, 110 S.Ct. 2316, 2320-21, 110 L.Ed.2d 134 (1990); see also Anthony v. Sullivan, 982 F.2d 586, 589 (D.C.Cir.1993). There the Court rejected the United States's argument that despite liability for EAJA fees for the merits litigation, the United States should not be liable for fees in the fee litigation without a new finding that the United States had resisted them without substantial justification. But the United States's stubbornness on the merits was clearly a "but for" cause of the fee litigation, so award of the fees for fee litigation was necessary to internalize the full cost of the United States's prior obstruction. See also Anthony v. Sullivan, 982 F.2d at 589 (want of substantial justification on merits satisfies that requirement for fees for ensuing fees litigation); Trichilo v. Secretary of HHS, 823 F.2d 702, 708 (2d Cir.1987) (similar); Smith by Smith v. Bowen, 867 F.2d at 734-35 (clarifying Trichilo ); cf. Battles Farm Co. v. Pierce, 806 F.2d 1098, 1101 (D.C.Cir.1986), vacated on other grounds, 487 U.S. 1229, 108 S.Ct. 2890, 101 L.Ed.2d 925 (1988) ("the statute is meant to discourage the federal government from using its superior litigating resources unreasonably--it is in this respect an 'anti-bully' law"). Thus Jean does not speak to instances where the second set of expenses would have been every bit as necessary if the United States had never taken an unjustified position.[4]
 
 
 16
 None of this is inconsistent with the normal requirement that a litigant must, to qualify as a prevailing party under EAJA, secure substantive benefits of some sort. See Hudson, 490 U.S. at 886, 109 S.Ct. at 2255; Waterman S.S. Corp. v. Maritime Subsidy Bd., 901 F.2d 1119, 1122 (D.C.Cir.1990); but see Schaefer, --- U.S. at ---- - ----, 113 S.Ct. at 2631-32 (holding plaintiff prevails once he obtains a remand under sentence four of 42 U.S.C. Sec. 405(g)). Nothing in EAJA suggests that each element necessary to a party's achieving "prevailing party" status is ipso facto compensable. In fact, courts have allowed parties to point to events outside of the litigation to establish that they prevailed. See, e.g., Public Citizen Health Research Group, 909 F.2d at 549-51 (plaintiff attains prevailing party status on basis of agency changes of position for which suit was "catalyst"). Accordingly, the fact that the plaintiffs were required to wait for [304 U.S.App.D.C. 400] the outcome of the commitment hearings before they were eligible as "prevailing parties" does nothing to affect the causal gap that necessitates severing those hearings from the first phase of the lawsuit.
 
 
 17
 * * *
 
 
 18
 Appellees filed a cross appeal, objecting to the district court's refusal to award a "special factor" enhancement of the fees because of the expertise in mental health law of the counsel for whom fees are requested, lawyers associated with the Judge David Bazelon Center for Mental Health Law. Because we reverse the award of attorneys' fees we need not address that issue.
 
 The decision of the district court is
 
 19
 Reversed.
 
 
 
 [1]
 Of 217 committed inpatients, only 28% retained inpatient status after the hearings. Of 92 committed outpatients, only 8% continued treatment in that capacity
 
 
 [2]
 EAJA awards fees and other expenses to any "prevailing party other than the United States ... [which are] incurred by that party in any civil action ... brought by or against the United States ..., unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust". 28 U.S.C. Sec. 2412(d)(1)(A)
 
 
 [3]
 Not entirely, however. One might argue that even with an adequate causal relation between the United States's unjustified position and the remedial hearings, and even with the transfer statute's savings clause, EAJA may not be applied to counsel fees incurred in proceedings between individual plaintiffs and the District of Columbia. EAJA, after all, seems to assume some dispute between the United States and the prevailing party. On the view we take of the case it is unnecessary to reach this issue
 
 
 [4]
 We note that in Shalala v. Schaefer the Supreme Court observed that despite that decision's limiting of Sullivan v. Hudson, a remand under "sentence six" of 42 U.S.C. Sec. 405(g) would not terminate the initial civil action. --- U.S. at ---- n. 4, 113 S.Ct. at 2631 n. 4.; see also Curtis v. Shalala, 12 F.3d 97, 100 (7th Cir.1993). These remands occur when the Secretary requests a remand before answering a complaint or where new evidence counsels in favor of additional agency proceedings. Schaefer, --- U.S. at ---- n. 2, 113 S.Ct. at 2629 n. 2. The Court's observation of course goes only to the scope of a civil action and does not reach the issue of whether fees incurred on remand during a civil action are compensable even where not caused by the government's having taken an unjustified position