Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports. Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals

FOR THE DISTRICT OF COLUMBIA CIRCUIT

Decided April 20, 2004

No. 02-1379

AMERICAN WRECKING CORPORATION,
PETITIONER

v.

SECRETARY OF LABOR,
RESPONDENT

On Petitioner's Application for Attorneys' Fees

Before: GINSBURG, *Chief Judge*, and EDWARDS, *Circuit Judge,* and WILLIAMS, *Senior Circuit Judge*.

Opinion for the Court filed *Per Curiam.*

*Per Curiam*: In August 1996, the Occupational Safety and Health Administration ("OSHA") cited petitioner American Wrecking Corporation ("AWC") for three willful violations of demolition safety regulations, after a fatal accident at a demolition site at which AWC was the subcontractor. Two of the citations were vacated during administrative proceedings before the Occupational Safety and Health Review Commis-

Bills of costs must be filed within 14 days after entry of judgment. The court looks with disfavor upon motions to file bills of costs out of time.

sion ("Commission"), while the third made its way to this court. On AWC's petition for review, we upheld the Commission's finding of liability as to that citation, but reversed the finding that AWC's violation was willful. *See Am. Wrecking Corp. v. Sec'y of Labor*, 351 F.3d 1254 (D.C. Cir. 2003).

AWC now seeks an award of nearly $300,000 in fees and expenses, pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412 (2000), which entitles a party to recover from the United States reasonable fees and expenses incurred by that party in any civil action or judicial review of agency action in which the party prevailed. 28 U.S.C. § 2412(d)(1)(A). Prevailing parties are not entitled to such an award, however, if the Government's position in litigation or at the agency level was "substantially justified." *Id.* In addition, only such fees and expenses as are *reasonable* are available to a prevailing party. 28 U.S.C. § 2412(d)(2)(A). In this case, we find that the Secretary of Labor's ("Secretary") position was substantially justified in all but two phases of the proceedings against AWC. Moreover, we find that many of the expenses and fees AWC has requested exceed the bounds of what is "reasonable" under the EAJA. We therefore award fees and expenses to AWC in the amount of $43,910.16, which represents the reasonable amount to which AWC is entitled for the two phases of the proceedings in which the Secretary's position was not substantially justified.

## I. BACKGROUND

The relevant facts surrounding OSHA's investigation of AWC's demolition practices are set forth in detail in our previous opinion. *See Am. Wrecking Corp.*, 351 F.3d at 1257-58. Therefore, we will only briefly summarize these facts here.

AWC was selected as the subcontractor on a demolition project at the Steel Point Generating Station in Bridgeport, Connecticut ("Steel Point"). Under the supervision of Mr. Frank Bartolotti, AWC began demolition work in June 1995. By February 1996, work had begun on the demolition of the turbine generator building, a large steel-frame structure that

formerly housed the generator area of the power plant. On February 27, 1996, two AWC employees were making preparatory cuts to the steel columns of the turbine building when the columns collapsed and several tons of bricks fell, killing one of the workers.

An OSHA compliance officer arrived at the scene soon after the accident and commenced a six-month investigation into AWC's safety practices. In August 1996, OSHA issued three citations to AWC. The first citation charged that AWC had not performed the requisite engineering survey of the structure prior to demolition, in violation of 29 C.F.R. § 1926.850(a) ("Engineering Survey Citation"). The second citation charged that AWC failed to remove all "loose material" from the steel skeleton of the building by leaving several tons of bricks suspended without support at the top of the south wall of the structure, in violation of 29 C.F.R. § 854(f) ("Bricks Citation"). The third citation charged that AWC permitted employees to work where deterioration and debris on the roof of the building created a hazard of falling material, in violation of 29 C.F.R. § 1926.859(g) ("Roof Citation"). All three citations were charged as "willful" violations, for which the Secretary proposed a penalty of $42,000 each.

After AWC contested the citations, the Secretary filed a complaint, and a six-day hearing was held before an Administrative Law Judge ("ALJ") in April 1997. The ALJ issued his first decision on May 27, 1998. *See Am. Wrecking Corp.*, 1998 O.S.H. Dec. (CCH) ¶ 31,603 (O.S.H.R.C. 1998). The ALJ vacated the Engineering Survey Citation, finding that, in fact, AWC had prepared several analyses and reports prior to demolition and that the Secretary conceded that those documents satisfied the safety standard. *Id.* at *5-6. The ALJ affirmed the other two citations as willful violations and imposed penalties of $70,000 for each violation, the maximum penalty available under the Occupational Safety and Health Act, *see* 29 U.S.C. § 666(a) (1994).

Upon AWC's petition for discretionary review, the Commission vacated the Roof Citation, finding that the Secretary had not met her burden of proving that any AWC employees had access or exposure to the cited condition. *See Am. Wrecking*

*Corp.*, 19 O.S.H. Cas. (BNA) 1703, at \*15 (O.S.H.R.C. 2001). As to the Bricks Citation, the Commission affirmed the ALJ's finding of liability, based on photographic evidence and expert testimony documenting the instability of the bricks suspended at the top of the south wall of the turbine building. *Id.* at \*6-8. The Commission set aside the ALJ's determination as to willfulness, however, finding that the ALJ had failed to provide sufficient findings of fact and credibility determinations to support that holding. *Id.* at \*12-14. The Commission remanded the case to the ALJ with specific instructions to reevaluate the evidence and reconsider the willfulness of the violation. *Id.* at \*14. On August 23, 2002, the ALJ reaffirmed the finding of willfulness and reinstated the $70,000 penalty. *See Am. Wrecking Corp.*, 19 O.S.H. Cas. (BNA) 2093 (O.S.H.R.C. 2002). The Commission's denial of AWC's petition for discretionary review made that decision a final order of the Commission.

AWC filed a petition for review in this court. We upheld the finding of liability as to the Bricks Citation, holding that "expert testimony and . . . photographic evidence constitute[d] substantial evidence in support of the Commission's finding that AWC violated the loose material standard." *Am. Wrecking Corp.*, 351 F.3d at 1262. We reversed the finding of willfulness, however, holding that the ALJ had "made no coherent credibility determinations to support such a finding" and had "ignored evidence that refute[d] his finding." *Id.* at 1265. We further held that the ALJ's willfulness holding was "flatly at odds with the controlling case law." *Id.* Thus, out of the three original citations for willful violations, for which the Secretary sought a total penalty of $126,000, and for which the ALJ initially imposed a total penalty of $140,000, AWC was ultimately found liable for only one non-willful violation, for which the maximum possible penalty is $7,000. *See* 29 U.S.C. § 666(b), (c). AWC now petitions this court for an award of fees and expenses pursuant to the EAJA.

## II. ANALYSIS

Under the EAJA, a "prevailing party" in any civil action brought by or against the United States, "including proceed-

ings for judicial review of agency action," is entitled to recover reasonable fees and expenses incurred in the proceeding. 28 U.S.C. § 2412(d)(1)(A). The prevailing party is not entitled to such fees and expenses, however, if the court finds that the position of the United States was "substantially justified." *Id.* Here, the Secretary does not dispute that AWC qualifies as a "prevailing party," insofar as AWC succeeded in having two of the three citations vacated completely and removing the "willful" designation from the third. AWC's entitlement to recovery thus depends on whether the Secretary's position during these proceedings was "substantially justified." AWC also must demonstrate that its requested fees and expenses are "reasonable." 28 U.S.C. § 2412(d)(2)(A).

## A.   Substantial Justification

The Secretary's position is substantially justified if it is "justified to a degree that could satisfy a reasonable person," *i.e.*, that it has a "reasonable basis both in law and fact." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). The Secretary need not have won a case on the merits in order for her position to be "substantially justified." *See id.* at 569; *Role Models Am., Inc. v. Brownlee*, 353 F.3d 962, 967 (D.C. Cir. 2004). Rather, a position "can be substantially (*i.e.*, for the most part) justified if a reasonable person could think it correct . . . ." *Pierce*, 487 U.S. at 566 n.2.

Because AWC's fee petition arises out of a proceeding for judicial review of agency action, the government "must demonstrate the reasonableness not only of its litigation position, but also of the *agency's* actions." *Role Models Am.*, 353 F.3d at 967 (citing *Halverson v. Slater*, 206 F.3d 1205, 1208 (D.C. Cir. 2000); 28 U.S.C. § 2412(d)(2)(D)). Our analysis proceeds in a piecemeal fashion, examining the reasonableness of the Secretary's position at each successive phase of the proceeding on each separate issue, both at the agency level and before this court. *See Air Transp. Ass'n of Can. v. Fed. Aviation Admin.*, 156 F.3d 1329, 1332 (D.C. Cir. 1998); *Alphin v. Nat'l Transp. Safety Bd.*, 839 F.2d 817, 822-23 (D.C. Cir. 1988).

6

The Secretary concedes, and we agree, that the Engineering Survey Citation was not substantially justified. As the Secretary acknowledged before the ALJ, AWC had prepared documents that satisfied the requirements of the relevant safety standard. *See Am. Wrecking Corp.*, 1998 O.S.H. Dec. (CCH) ¶ 31,603, at *5. AWC is therefore entitled to fees and expenses incurred in defending against this citation.

Turning to the Bricks Citation, we find that the Secretary was substantially justified in charging AWC with willfully violating the safety standard and pursuing that issue before the Commission. However, the ALJ's finding of willfulness in his second decision and the Secretary's subsequent defense of that finding were not substantially justified. AWC is therefore entitled to fees and expenses incurred in seeking review of that issue before the Commission and before this court.

As we held in our previous opinion, there was substantial evidence on the record supporting the claim that AWC violated the "loose material" regulation by leaving bricks suspended in an unstable manner at the top of the south wall of the turbine building. *See Am. Wrecking Corp.*, 351 F.3d at 1261-62. In this case, the same substantial evidence that sustained the Secretary's position before this court also renders that position substantially justified within the meaning of the EAJA. In addition, there was a sufficient basis in the record, when viewed as a whole, to support the Secretary's *initial claim* that the violation was willful. AWC's demolition supervisor, Frank Bartolotti, had personally removed all the exterior masonry from the building except the suspended bricks on the south wall. Furthermore, the Secretary's expert witnesses testified that a person with Bartolotti's experience would have known that bricks left in such a position would be unstable and hazardous to employees working beneath them. Standing against this evidence was Bartolotti's own testimony that he believed the bricks to be safe and secure. Were the ALJ to discredit Bartolotti's testimony, the charge of willfulness might prevail. Given this prospect, it was not unreasonable for the Secretary to pursue this charge.

From the time of the ALJ's second decision affirming the willfulness charge, however, the Secretary's position on the issue of willfulness became untenable. As we discussed in our previous opinion, the ALJ failed to make the necessary determination as to Bartolotti's credibility, despite the Commission's explicit holding that no finding of willfulness could be supported in the absence of such a determination. *See Am. Wrecking Corp.*, 351 F.3d at 1263. Instead, the ALJ asserted, for the first time, that Bartolotti and others at the Steel Point site intentionally placed expediency above safety in an effort to avoid financial penalties for missed deadlines. As we found, "[t]his finding [was] unsupported by the record and totally ignore[d] clear evidence to the contrary." *Id.* The ALJ's reasoning was also "patently flawed," we held, because it equated the proposition that a person with Bartolotti's experience should have known about the hazard posed by the suspended bricks with a finding that he in fact did have the requisite "heightened awareness" or "plain indifference" to support a finding of willfulness. *Id.* at 1264-65. In short, the ALJ "made no coherent credibility determinations," "ignored evidence that refute[d] his finding," and issued a holding that was "flatly at odds with the controlling case law." *Id.* at 1265. Given these flaws, and given that the ALJ's second decision ignored the Commission's specific remand instructions, there was no substantial justification for the Commission's refusal to review that decision or for the Secretary's defense of it before this court. We therefore find that AWC is entitled to reasonable fees and expenses incurred in defending against the willfulness element of the Bricks Citation – though not the underlying violation itself – after the time of the ALJ's second decision.

As to the Roof Citation, we find that the Secretary's position was substantially justified throughout the administrative proceedings. Although the Commission ultimately held that the Secretary failed to prove that AWC employees had actually been exposed to the danger of debris falling through holes in the deteriorating roof, there was evidence on the record establishing the existence of the debris and AWC's decision not to remove it. *See* Hearing Tr. at 177, 181-91

(4/8/97). Moreover, there were precedents available suggesting that the Secretary could meet her burden of proof by demonstrating that it was reasonably predictable that employees might be in the zone of danger. *See Donovan v. Adams Steel Erection, Inc.*, 766 F.2d 804, 812 (3d Cir. 1985); *Fabricated Metal Prods., Inc.*, 18 O.S.H. Cas. (BNA) 1072, at *2-3 (O.S.H.R.C. 1997) (citing cases). The Commission did not disturb the ALJ's finding that AWC had violated the standard by failing to remove debris from the roof. Rather, its decision turned on the absence of proof that AWC employees were working directly beneath any of the holes in the roof or that debris actually fell into the area where employees were working. *See Am. Wrecking Corp.*, 19 O.S.H. Cas. (BNA) 1703, at *15. On this record, a reasonable person could have been satisfied that it was reasonably predictable that AWC employees would be exposed to the hazard and that the Secretary's position therefore could be correct.

AWC argues that under 28 U.S.C. § 2412(d)(1)(D), it is entitled to full recovery of all its fees and expenses without regard to whether the Secretary's position was substantially justified. That section provides that if the United States' original demand in a civil action or judicial review of an agency action is "substantially in excess" of any judgment the United States finally obtains and is "unreasonable when compared with such judgment, under the facts and circumstances of the case," the court shall award to the petitioner the reasonable fees and expenses incurred in defending against the excessive demand. 28 U.S.C. § 2412(d)(1)(D). Pointing out that the Secretary's initial proposed penalty of $126,000 is substantially in excess of the $7,000 maximum penalty that is now available against it, AWC argues that it is entitled to all of its fees and expenses.

There is scant case law interpreting § 2412(d)(1)(D). Nevertheless, we do not read that provision as permitting AWC to recover the full amount of its fees and expenses, even acknowledging the large disparity between the Secretary's initial demand and the final judgment obtained by the Government. First, the statute requires not only that such a disparity exist, but also that it be "unreasonable" under the

facts and circumstances of the case. *See United States v. One 1997 Toyota Land Cruiser*, 248 F.3d 899, 906 (9th Cir. 2001). In this case, the Secretary's initial demand only appears "unreasonable" to the extent that her position in litigation and before the agency was not "substantially justified." In other words, this section surely does not permit AWC to recover a greater amount than it could otherwise recover under § 2412(d)(1)(A). To hold otherwise would permit prevailing parties to circumvent the "substantial justification" requirement of § 2412(d)(1)(A), a result we do not imagine Congress to have intended.

The function of § 2412(d)(1)(D) is merely to permit *non-*prevailing parties to recover fees and expenses where the United States obtained a judgment that was substantially – and unreasonably – exceeded by its initial demand. *See One 1997 Toyota Land Cruiser*, 248 F.3d at 904; *Wolkow Braker Roofing Corp.*, 19 O.S.H. Cas. (BNA) 1267 (O.S.H.R.C. 2000). In this case, the only issue as to which AWC could be characterized as a non-prevailing party is the willfulness of the Bricks Citation. But we have already held that AWC is entitled to fees and expenses related to that issue under § 2412(d)(1)(A), because the Secretary's position was not substantially justified. Finally, we note that § 2412(d)(1)(D) only permits recovery of the fees and expenses incurred in defending against the *excessive demand*, not in litigating the entire proceeding. Accordingly, this section does not permit AWC to recover any more than the award to which it is entitled under § 2412(d)(1)(A).

To summarize, we hold that AWC is entitled to recover fees and expenses associated with defending against the Engineering Survey Citation. We further hold that AWC is entitled to recover fees and expenses incurred in connection with the willfulness element of the Bricks Citation after the time of the ALJ's second decision.

## B.   Reasonable Fees and Expenses

The EAJA limits a party's recovery to those fees and expenses that are "reasonable." Upon review of the docu-

ments submitted in support of AWC's petition, we find that much of the requested amount exceeds this statutory limit.

### 1. *The Engineering Survey Citation*

The Engineering Survey Citation was vacated in the ALJ's first decision, where it was only one of three citations at issue. Accordingly, because AWC's documents do not indicate which fees and expenses are associated with which citations, we award one-third of the reasonable fees and expenses incurred up through the time of the ALJ's first decision. *See Kennecott Corp. v. EPA*, 804 F.2d 763, 766 (D.C. Cir. 1986). Throughout that period, AWC was represented by two consultants – first by Alfred Busicchia, and then by Joseph W. Rufolo. The Secretary does not contest that AWC may receive fees for these consultants, but because they are not attorneys, we pause to note the basis of our authority to award fees for their services.

The EAJA created separate provisions for obtaining an award of fees and expenses from a court for a civil action or judicial review of an agency proceeding, *see* 28 U.S.C. § 2412, and from an agency for an administrative adjudication, *see* 5 U.S.C. § 504 (2000). The former, under which AWC filed this petition, permits recovery only of "attorney fees." *See* 28 U.S.C. § 2412(d)(2)(A). By contrast, the parallel provision in Title 5 governing recovery of fees in agency proceedings permits recovery of "attorney or agent fees." *See* 5 U.S.C. § 504(b)(1)(A). Where a party seeks an award from a court pursuant to 28 U.S.C. § 2412 for the fees and expenses of litigating a petition for review of agency action, the court should also award the appropriate fees and expenses incurred in the underlying agency litigation, "to the same extent authorized in" § 504(a) of Title 5. *See* 28 U.S.C. § 2412(d)(3). Accordingly, because AWC would be entitled to recover fees for non-attorney representatives had it proceeded under that section, it is equally entitled to recover such fees pursuant to § 2412(d). *But see Cook v. Brown*, 68 F.3d 447 (Fed. Cir. 1995) (holding that parties may not recover fees for representation by an unsupervised nonlawyer under 28 U.S.C. § 2412,

but not addressing the cross-reference in that section to 5 U.S.C. § 504).

AWC requests fees for 166 hours of work for Alfred Busicchia at a rate of $250 per hour. During this time, Busicchia's work consisted primarily of filing AWC's contest letter and response to the complaint. Busicchia also participated in an informal conference with OSHA, filed various nonsubstantive motions, and attended several meetings regarding AWC's strategy and preparation for the ALJ hearing. Busicchia did not participate in the actual trial. We find that 166 hours is excessive, for purposes of the EAJA, in light of the nature of the work Busicchia performed. We note that Busicchia spent approximately 87 hours in trial preparation and strategizing, despite the fact that he ended his representation of AWC weeks before the trial even began. Nor did Busicchia prepare any substantial pleadings or briefs on AWC's behalf. We are further troubled by the fact that approximately 82 hours billed in the month of March 1997 are exact duplicates of the hours reported by Joseph Rufolo for that month. In addition, many of Busicchia's entries are vague in their description of his activities. For example, Busicchia lists several meetings and teleconferences without any indication of their subject matter. As we have often noted in the context of fee-shifting statutes, such inadequacies render it difficult for the court to ascertain the reasonableness of the hours billed. *See In re Espy*, 346 F.3d 199, 204 (D.C. Cir. 2003).

In light of these deficiencies, we will reduce the number of hours for Busicchia by 50%, to 83 hours. Because we assume that two-thirds of this time was spent in connection with the two citations for which the Secretary's position was substantially justified, we award fees to AWC for 27.667 hours of work by Alfred Busicchia. As for the hourly rate, the EAJA limits the hourly rate for attorneys or agents to $125, unless the petitioner demonstrates a "special factor" warranting a higher rate. *See* 5 U.S.C. § 504(b)(1)(A); 28 U.S.C. § 2412(d)(2)(A). In addition, the court may adjust this rate to account for increases in the cost of living. *See id.* AWC has not suggested the existence of any special factors, though

in its reply brief it did request a cost-of-living adjustment to 2004 dollars. Contrary to AWC's request, the court must calculate any cost-of-living increase according to the year in which the service was performed, not the year in which the fee is recovered. *See Masonry Masters, Inc. v. Nelson*, 105 F.3d 708, 709-10 (D.C. Cir. 1997). The $125 hourly rate was established in 1996. Because Busicchia's services were performed in late 1996 and early 1997, no adjustment is warranted. Therefore, AWC is entitled to fees for 27.667 hours of work at $125 per hour, for a total of $3,458.33.

AWC also requests $246.15 in expenses for services performed by Busicchia. Almost all of these expenses are for mileage and tolls. Such costs are not reimbursable as expenses under the EAJA. *See Role Models Am.*, 353 F.3d at 974 (citing *Mass. Fair Share v. Law Enforcement Assistance Admin.*, 776 F.2d 1066, 1069-70 (D.C. Cir. 1985)). The remaining expense item is labeled simply "informal conference," giving the court no indication of whether the costs associated with the conference are reimbursable. We therefore award no expenses. The total award for services performed by Alfred Busicchia is therefore $3,458.33.

Turning to Joseph W. Rufolo, AWC requests fees for 539.45 hours of work, at $250 per hour. Of those hours, 363.75 were billed prior to the ALJ's first decision. As with Busicchia, we find that many of Rufolo's reported hours exceed what is reasonable for purposes of the EAJA. First, there is the matter of the duplication of approximately 82 hours in March 1997 between Rufolo and Busicchia, whose invoices are identical for that month. In addition, Rufolo's billed hours for the days of the ALJ hearing average over 17 hours per day, excluding a day on which the hearing lasted only a half day. Rufolo also listed two hours of trial time for April 14, a day on which there were no trial proceedings. We further note that AWC requests fees for 102 hours that Rufolo took to prepare the post-trial brief. This is the equivalent of two-and-a-half 40-hour work weeks, which we find to be excessive. The invoice for April 1997 also lists two identical entries for April 7, for 13 hours each. In light of these inflated and duplicative entries, we reduce Rufolo's

hours by half to 181.875, of which one-third, or 60.625 hours are eligible for reimbursement.

Although AWC requests an hourly rate of $250 for Rufolo, we will reduce this to the statutory limit of $125 per hour, adjusted for inflation. The bulk of Rufolo's hours for which we will reimburse AWC occurred in 1997, one year after the amendment of the $125 limit. Using the Bureau of Labor Statistics' Consumer Price Index inflation calculator, we will allow an hourly rate for 1997 of $127.87. Using these figures, the total reasonable fees to which AWC is entitled for work performed by Rufolo is $7,752.12.

AWC also requests expenses for Rufolo's service. For the period prior to the ALJ's first decision, the total expenses, excluding non-reimbursable items such as travel and messenger services, are $5,262.98, comprised mainly of copying expenses and the cost of the court reporter and transcript. AWC is entitled to one-third of this amount, or $1,754.33. Accordingly, the total award for AWC in connection with services performed by Joseph Rufolo comes to $9,506.45

The third representative for which AWC seeks fees and expenses, attorney Howard A. Wintner, only represented AWC in the interval between the ALJ's first and second decisions, during which time the Secretary's position was substantially justified in its entirety. AWC therefore is not entitled to any fees or expenses in connection with Wintner's services. The total award of fees and expenses for the Engineering Survey Citation comes to $12,964.78.

*2. The Bricks Citation*

The Secretary's position as to the willfulness of the violation underlying the Bricks Citation was not substantially justified after the ALJ's second decision. Again, AWC's records do not indicate which fees and expenses are associated with the issue of willfulness and which are associated with the underlying violation. We therefore award half of the reasonable fees and expenses incurred after the ALJ's second decision.

Joseph Rufolo billed AWC for 2.5 hours spent reviewing the ALJ's second decision with the client. We allocate 1.25 of

these hours to the issue of willfulness, charged at the inflation-adjusted rate for 2002 of $143.32. Rufolo reported no reimbursable expenses after the ALJ's second decision. AWC is therefore entitled to $179.15 for Rufolo's services in connection with the Bricks Citation.

AWC also seeks fees and expenses for work performed by attorney Joseph P. Paranac, Jr. In late 2002, Paranac billed AWC for 36.8 hours of his own time, at a rate of $275-300 per hour. Paranac also listed 19.7 hours for an associate's time, billed at $110 per hour. A third attorney billed 4 hours at a rate of $205 per hour. During this period, Paranac and his associates prepared AWC's petition for discretionary review before the Commission and the petition for review before this court, while also meeting and strategizing with AWC. Because these hours are documented with adequate detail for the court to assess their necessity, and because the hours appear reasonable, we will award AWC fees for one-half of the full amount of hours. Two of the attorneys' hourly rates far exceed the statutory limit, however; we therefore calculate the amount for their work at a rate of $143.32 per hour, the statutory rate adjusted for inflation. The total award for attorney fees for Paranac for 2002 comes to $4,007.23.

In 2003, Paranac billed 114.8 hours at $300-310 per hour, while the associate billed 92.5 hours at $110 per hour. The third attorney billed 1.7 hours at $250 per hour. During this period, the attorneys prepared the opening brief, reply brief, and joint appendix for the petition for review in this court, in addition to preparing for and participating in oral arguments. As the Secretary rightly points out, however, 1.5 hours billed by one associate for time spent gaining admittance to the bar of this court should not be counted as attorney fees for purposes of the EAJA. *See Role Models Am.*, 353 F.3d at 973. Reducing the hourly rates for the two attorneys whose rates exceed the statutory limit to $146.59 per hour and dividing the total hours by two, the total attorney fees for 2003 come to $13,543.87. In addition, AWC is entitled to $2,545.29 in expenses for Paranac's services, which covers half the costs of photocopies and document production, computer research, and filing fees. The award for AWC's defense

against the willfulness element of the Bricks Citation after the ALJ's second decision therefore totals $20,275.54.

### 3. *The EAJA Petition*

In a supplemental motion, AWC seeks fees and expenses for Paranac's services in the preparation of this EAJA petition. "Cases in this Circuit have routinely awarded reasonable fees incurred in requesting fees under fee-shifting statutes" such as the EAJA. *Hirschey v. FERC*, 777 F.2d 1, 3 (D.C. Cir. 1985). Paranac and one other attorney billed a total of 118 hours in 2004 for compiling the application. This amounts to nearly three 40-hour weeks, an excessive amount, particularly when compared with the number of hours Paranac required for the much more substantial tasks of briefing and arguing the petition for review before this court. We therefore reduce this amount by half, to 59 hours, at the adjusted statutory rate of $148.34 per hour. The reimbursable expenses for this period, for photocopying and computer-based research, amount to $1,917.78. The total fees and expenses for preparation of the EAJA petition therefore come to $10,669.84.

### III. CONCLUSION

AWC is entitled to reasonable fees and expenses it incurred in defending against the Engineering Survey Citation ($12,-964.78), the willfulness element of the Bricks Citation after the ALJ's second decision ($20,275.54), and in preparing the EAJA petition ($10,669.84). We order the Secretary to reimburse AWC in the amount of $43,910.16.